**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff, Appellant,**

v.

**Frank J. TRABUCCO, et al., Defendants, Appellees.**

No. 85–1997.

United States Court of Appeals, First Circuit.

Argued April 11, 1986.

Decided May 14, 1986.

Stephen P. O'Rourke with whom Johnny J. Butler, General Counsel (Acting), Gwendolyn Young Reams, Associate General Counsel (Acting), and Vincent Blackwood, Asst. Gen. Counsel, Washington, D.C., were on brief, for plaintiff, appellant.

H. Reed Witherby, Asst. Atty. Gen., Government Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, ALDRICH and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

The question on this appeal is whether the principle of *stare decisis* forecloses redetermination of an issue raised, considered, and decided in a prior case where the presentation of evidence has been "one-sided", with no proffer of rebuttal expert testimony. Our answer is that *stare decisis* still applies and, on this record, forecloses redetermination.

This case, brought by the Equal Employment Opportunity Commission (EEOC) against the Commonwealth of Massachusetts, its Commissioner of Public Safety and its Board of Retirement, challenges the Massachusetts statutory mandatory retirement age of 50 for all members of the uniformed branch of the state police, Mass. Gen.Laws Ann. ch. 32, § 26(3)(a) (West 1966 & Supp.1985), as not being "a bona fide occupational qualification [BFOQ] reasonably necessary to the normal operation of [the branch's] business." Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(f)(1).

The action was instituted on January 19, 1984, following a district court decision in *Mahoney v. Trabucco*, 574 F.Supp. 955 (D.Mass.1983), and before our reversal, on July 2, 1984, of that decision, *Mahoney v. Trabucco*, 738 F.2d 35 (1st Cir.1984). In *Mahoney*, an officer of the state police who held a desk job as a telecommunications specialist challenged the general mandatory retirement provision and sought injunctive relief from enforcement of the retirement requirement as applied to him. The

district court held that age 50 was a BFOQ for most state troopers, but that the Commonwealth had failed to prove that age 50 was a BFOQ for the particular desk job held by officer Mahoney. *Mahoney*, 574 F.Supp. at 960–63. We reversed, holding that all state troopers should be treated as one occupation. *Mahoney*, 738 F.2d at 38–39. We left in place the district court's holding that age 50 was a BFOQ for that occupation. *Id.* at 37.

The defendants in the case at bar moved for, and the district court granted, summary judgment on the ground that *Mahoney* controlled under the doctrine of *stare decisis*. EEOC contended that there was a triable issue of material fact because additional "more weighty opinion of the medical community" could be proferred in opposition to the court's decision in *Mahoney*.

■ *Stare decisis*, unlike the doctrines of *res judicata* and collateral estoppel, is not narrowly confined to parties and privies, and it does not draw its force from the policy protecting final judgments. Rather, when its application is deemed appropriate, the doctrine is broad in impact, reaching strangers to the earlier litigation. Further, it leaves some room for judgment as to its preclusive power, and it stems from the principles of stability and equal treatment underlying the orderly development of legal doctrine. 1B *Moore's Federal Practice* ¶ 0.401, at 3; ¶ 0.402[2], at 27.

■ The starting point for analysis is to determine, to use contemporary nomenclature, the data base. The principal evidence of what has been decided is a court's written opinion. 1B *Moore's Federal Practice* ¶ 0.402[2], at 33. Referring to his own Court, Justice Stewart once observed, "... I would have thought that except in rare instances an analysis of the positions taken by the parties in briefs submitted to this Court should play no role in interpreting its written opinions. [Footnote omitted.] A contrary rule would permit the 'plain meaning' of our decisions to be qualified or even overridden by their 'legislative history'— i.e., briefs submitted by the contending par-

ties." *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 617–18, 96 S.Ct. 3110, 3130–32, 49 L.Ed.2d 1141 (Stewart, J., dissenting). Although, as the Court's opinion illustrated, *id.* at 588–89, 96 S.Ct. at 3116–17, briefs of parties are sometimes resorted to, our primary resources in helping us decide whether the *Mahoney* decision should constitute a sufficient basis for summary judgment are the opinions of the district court and of our own court in that case.

█ The district court began by characterizing the case as a challenge to the age 50 retirement requirement for "all members" of the uniformed state police. 574 F.Supp. at 956. It then noted that the central issue was the adequacy of the Commonwealth's BFOQ defense, since there was "no doubt that the statutory mandatory retirement age constitutes a *prima facie* violation of the ADEA." *Id.* at 957. Continuing, the court noted, "[t]he Commonwealth asserts, and sought to prove at trial, that age is a BFOQ for members of the uniformed branch of the Massachusetts State Police." *Id.*

The court then proceeded to apply the approach of *Usery v. Tamiami Tours, Inc.*, 531 F.2d 224, 235–36 (5th Cir.1976). It found first, that the mandatory age requirement was reasonably related to the essential operation of the Massachusetts State Police. *Id.* at 958. It then pursued the second part of BFOQ analysis: the inquiry into whether the employer has shown either that all or most employees above 50 would be unable to perform the duties of the job or that deciding fitness in each individual case would be impracticable. In this inquiry, the court first raised a preliminary question, "[h]ow should the 'duties of the plaintiff's job' be defined?" *Id.* In considering the Commonwealth's argument that the determination of age as a valid BFOQ should be made for all members of the uniformed branch of the state police, the court summarized the exigent demands confronted by the majority of the police assigned to normal duty. It noted the testimony of the Commonwealth's two medical experts concerning diminished ae-robic capacity and increased incidence of coronary artery disease of individuals over 50 years of age, and the impracticability of making individual determinations of an officer's fitness after reaching that age. *Id.* at 959–60. The court concluded this review of the Commonwealth's position by observing that plaintiff had offered no rebuttal medical evidence and stated: "Thus, were I to rule that the duties of the job at issue in this case are the duties of a member of the uniformed branch, generally, rather than the duties that the plaintiff actually performs, I would conclude that the Commonwealth had met its burden of proof on the BFOQ defense." *Id.* at 960.

The court went on, however, to follow the approach of *E.E.O.C. v. City of St. Paul*, 671 F.2d 1162 (8th Cir.1982), holding that its assessment of the validity of the age BFOQ should be made in reference to the specific duties of plaintiff Mahoney as a desk officer. Accordingly, notwithstanding the possibility that plaintiff could be reassigned to more arduous duties or called out in an emergency, the court ruled that the Commonwealth had failed to prove the BFOQ defense. *Id.* at 962.

In our review of the district court's decision, we noted that the court had concluded that all the prongs of the *Tamiami* test "had been met for members of the uniformed state police 'generally.'" *Mahoney*, 738 F.2d at 37. We then addressed the court's "particularistic case-by-case analysis", remarking on a number of vexing practical and policy implications of such an approach, *id.* at 38, and inquired whether discernible Congressional intent ran counter to an across-the-board BFOQ for a class such as the uniformed branch of the state police. Our answer was that it did not. *Id.* at 39–41. We concluded our analysis by taking a position between one that would recognize no occupational specialty within a "particular business" and one that would "atomize the general concept of 'occupation.'" *Id.* at 39. We chose to recognize as an occupation, meriting its own set of qualifications, a job that involved "more of a recognized and discrete

vocation rather than a desk assignment for an employee subject to all the obligations and benefits of a quasi-military organization." *Id.* at 39. We therefore reversed the judgment below.

The effect of our decision was to deny relief to plaintiff Mahoney. A necessary rationale of the decision was that Mahoney had not succeeded in establishing that the across-the-board BFOQ was invalid.

In the instant case the EEOC has argued at various times that *stare decisis* should not foreclose its challenge because (1) Mahoney had explicitly conceded that he had no disagreement with the age 50 BFOQ for troopers generally (Appellant's main brief at 6, 7, 10); and (2) there was no holding by the district court on the general BFOQ issue and therefore the issue was neither properly before nor decided by the court of appeals. It is now clear that EEOC takes neither position. (Appellant's reply brief at 2). Rather, its argument is simply that the holding in *Mahoney*, validating Massachusetts' retirement age as a BFOQ for its uniformed trooper, is not entitled to *stare decisis* effect because plaintiff Mahoney never introduced "evidence to rebut the extensive expert testimonial and other scientific evidence produced by the Commonwealth." (Reply brief, p. 5). Accordingly, the court "could not have considered the issue in any meaningful way" (*id.* at 4) and "a decision compelled by evidence from only one side is of inherently questionable reliability." (*Id.* at 6).

Our review of the situations requiring the application of *stare decisis* indicates that this is a case in which *stare decisis* should be applied. The essential principles of *stare decisis* may be described as follows: (1) an issue of law must have been heard and decided, 1B *Moore's Federal Practice* ¶ 0.402[2], p. 30; (2) if "an issue is not argued, or though argued is ignored by the court, or is reserved, the decision does not constitute a precedent to be followed", *id.* at 37; (3) "a decision ... is *stare decisis* despite the contention that the court was not properly instructed by counsel on the legislative history, or that the argument

was otherwise insufficient", *id.* at 38 (citing *United States v. Russell,* 461 F.2d 605, 608 (10th Cir.1972)); (4) a decision may properly be overruled if "seriously out of keeping with contemporary views ... [or] passed by in the development of the law ... or ... proved to be unworkable", *id.* at 54–55; and (5) there is "a heavy presumption that settled issues of law will not be reexamined." *Id.* at 55.

■ We have found no case, nor has appellant cited us to any, that supports its contention that a weak or ineffective presentation in a prior case deprives the ruling of precedential effect. Such a contention is directly contrary to the third proposition in the previous paragraph. Indeed, we would not relish the prospect of evaluating the effectiveness of factual presentation and argument as a precondition of our determining whether or not to accord *stare decisis* effect to an issue that has been raised and decided.

Nevertheless, recognizing the non-absoluteness of *stare decisis*, and out of concern that parties absent from the earlier litigation not be unfairly prejudiced, we carry our inquiry beyond our summary of the two previous *Mahoney* opinions. At oral argument we were satisfied by counsel for appellant that it was not only aware of the *Mahoney* litigation, but could have intervened in the district court or could have filed an amicus brief on appeal. That it did neither was attributed to its assessment that the decision would not be given *stare decisis* effect and to certain practical problems, such as obtaining appropriate expert witnesses. We note that other interested parties, such as the union representing Massachusetts state troopers, did file an amicus brief supporting the Commonwealth.

We also observe that this is not a case where there was merely a formal raising of an issue. Not only did Mahoney place the validity of the Massachusetts statute directly in issue by his complaint, but he produced several witnesses who testified that they were at or over the statutory age of retirement, and were fully able to carry

out all the duties of their office of state police—a direct challenge to the facial requirement. A *prima facie* case of age discrimination having been established, as the district court held, the Commonwealth was required to go forward with its case. The testimony of its two experts, and the cross-examination of those witnesses, much of which was directed to attacking their credibility and authority, occupied one of the two days of trial.

The validity of age 50 as a BFOQ for all uniformed state troopers was addressed at length in the Commonwealth's brief on appeal, the evidence on this issue constituting most of its factual discussion. Mahoney's brief also contained a number of references to evidence undercutting the requirements and an argument, albeit a brief one, that even if his particular assignment were not the focus of the BFOQ exemption, defendants had failed to meet their burden. (Brief, pp. 41–42.) Thus, the issue in the case at bar was addressed by Mahoney in his litigation, even if not as thoroughly as the EEOC would have desired.

Finally, we conclude from other cases that there is no overpowering trend that indicates that the *Mahoney* ruling is out of sync with the times. A significant number of courts have upheld various mandatory retirement and hiring ages as BFOQ's in police jobs. *See, e.g., E.E.O.C. v. State of New Jersey*, 631 F.Supp. 1506 (D.N.J. 1986) (age 55 is a BFOQ for New Jersey state police); *E.E.O.C. v. Missouri State Highway Patrol*, 748 F.2d 447 (8th Cir.1984) (age 60 is a valid BFOQ for Missouri state police); *E.E.O.C. v. University of Texas Health Science Center*, 710 F.2d 1091, 1093 (5th Cir.1983) (maximum hiring age of 45 valid for campus police); *Popkins v. Zagel*, 611 F.Supp. 809 (C.D.Ill.1985) (age 60 is a BFOQ for Illinois state police). On the other hand, some courts have been persuaded by expert testimony that a mandatory retirement age does not meet the BFOQ requirement. *See, e.g., E.E.O.C. v. State of Florida*, No. TCA–84–7039 WS (N.D.Fla. Feb. 19, 1986) (striking down a mandatory retirement age of 62 for Florida state highway patrol officers); *E.E.O.C. v. City of Bowling Green*,

607 F.Supp. 524 (W.D.Ky.1985) (granting EEOC a preliminary injunction against application of a retirement age of 57 for police and firefighters). At most, this seems to be an issue where experts disagree.

We therefore conclude that appellant has not succeeded in overcoming the heavy presumption that accompanies a ruling on the precise issue in a prior case.

*Affirmed.*