**UNITED STATES of America, Appellee,**

v.

**Luis REVERON MARTINEZ, Defendant, Appellant.**

Nos. 85–1467, 86–1968.

United States Court of Appeals, First Circuit.

Heard Oct. 9, 1987.

Decided Jan. 6, 1988.

As Amended Jan. 13, 1988.

Arthur Kass, New York City, for defendant, appellant.

Dennis J. Dimsey, Dept. of Justice, with whom Jessica Dunsay Silver, Dept. of Justice, Washington, D.C., Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., and Wm. Bradford Reynolds, Asst. Atty. Gen., Washington, D.C., were on brief, for appellee.

Before CAMPBELL, Chief Judge,
and TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

■ The matter before us is in a sense an eschatocol to an earlier, more complex piece of work. *See United States v. Moreno Morales*, 815 F.2d 725 (1st Cir.1987). In *Moreno Morales*, a divided panel of this court affirmed the convictions of eight defendants who had been charged with violating 18 U.S.C. § 371 by conspiring to (i)

obstruct justice, (ii) give false testimony, and (iii) suborn perjury. *E.g.*, 815 F.2d at 730; *id.* at 752. We likewise affirmed the convictions of the same octet on an assortment of discrete charges of perjury and kindred misconduct in violation of 18 U.S.C. §§ 1621–23. *See, e.g.*, 815 F.2d at 730; *id.* at 752. The convictions of yet a ninth defendant, William Colon Berrios, were reversed because the evidence was too weak to support them. *Id.* at 742–44, 751. The case at bar comprises the appeal of Luis Reveron Martinez,[1] a codefendant of the nine persons with whom we dealt in *Moreno Morales*. Reveron Martinez was tried jointly with the other nine but, for reasons which need not concern us today, his appeal was not in order to be heard when we took up the consolidated appeals of his codefendants.

The prosecution of all ten men arose out of what came to be known as the affair at Cerro Maravilla. The facts of the incident and of its aftermath have been recounted in exegetic detail in both the majority and minority opinions in *Moreno Morales*, and we see no need to plow that tired ground again. We do, however, borrow heavily from the introductory portion of Chief Judge Campbell's opinion in *Moreno Morales, id.* at 729–30, to put appellant's points into perspective.

Arnaldo Dario Rosado and Carlos Soto Arrivi were both members of the Puerto Rico independence movement. They journeyed to Cerro Maravilla on July 25, 1978 with sabotage in mind. As matters turned out, they walked into a trap. Both of them were shot and killed by the police. The latter claimed originally that the two independentistas had died in a shootout while resisting arrest. Yet after prolonged investigation, legislative hearings, and the like, another story was told: the gendarmes, it was said, went to Cerro Maravilla for the avowed purpose of murdering the two saboteurs; they were captured and thereafter killed in cold blood; and the conspirators then embarked on a massive cover-up.

In the course of the ensuing investigation, testimony was given in a variety of fora: before federal grand juries, in Senate hearings, and in discovery depositions in a civil action brought by the heirs of the slain men. On February 6, 1984, a grand jury empanelled in the United States District Court for the District of Puerto Rico returned a forty-four count indictment against ten men (the nine involved in the *Moreno Morales* appeal and the present appellant), all of whom were members of the police force allegedly in attendance at the murder scene. After a month-long trial, guilty verdicts were returned on the vast majority of the accusations. Appellant was convicted of all five of the counts against him—a conspiracy charge, 18 U.S. C. § 371, three charges of making material false statements before a federal grand jury, 18 U.S.C. § 1621, and a charge of testifying falsely in a sworn deposition, 18 U.S.C. § 1623.

The appellant has spared no effort in his assault on the judgment below. We treat initially with a trio of assertions which question the fairness of his trial generally. We then deal with appellant's sufficiency challenges to each of three separate charges on which he stands convicted. (Reveron Martinez has not contested on appeal, and apparently concedes the adequacy of the proof anent, two of the perjury charges, *viz.*, Counts 24 and 25.) We complete our peregrination by scrutinizing the validity of the sentences imposed by the district court.

## I. PRETRIAL PUBLICITY

Reveron Martinez first contends that because the pervasive pretrial publicity associated with the affair at Cerro Maravilla was so "prejudicial and inflammatory," *Moreno Morales*, 815 F.2d at 775 (Torruella, J., dissenting), the district court had an

---

**1.** In actuality, Reveron Martinez brought two appeals. The first of these (No. 85–1467) was a prophylactic appeal taken out of an abundance of caution from a provisional order entered in May 1985. That order was superseded by the judgment of conviction entered in the district court on October 6, 1986. No. 86–1968, taken from the judgment, suffices to raise all of the appellant's claims. Accordingly, we dismiss the earlier appeal as moot.

obligation, *sua sponte*, to explore the possibility of changing venue. We disagree.

■ In *Moreno Morales*, we ruled that the pretrial publicity surrounding these events, though extensive, did not deprive the persons accused of their right to a fair trial. *Id.* at 730–39. Given the imbrication between appellant's claim and those earlier advanced by his codefendants, the doctrine of *stare decisis* bars relitigation of that issue. The judgment of the majority of the *Moreno Morales* panel on this precise point has become precedent, binding in future cases before us. If order and fairness are to attend the legal process, that point can be resolved no differently for Reveron Martinez than for his identically situated codefendants. *See EEOC v. Trabucco*, 791 F.2d 1, 2 (1st Cir.1986); *Sarzen v. Gaughan*, 489 F.2d 1076, 1082 (1st Cir.1973).[2] And the changed composition of the panel matters not at all. *See Lacy v. Gardino*, 791 F.2d 980, 985 (1st Cir.) ("Uniformity of decisions within a multi-panel circuit can only be achieved by strict adherence to prior circuit precedent, with the error-correcting function reserved to the court sitting en banc."), *cert. denied*, —— U.S. ——, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986).

Once we acknowledge that we are duty bound to accord preclusive effect to *Moreno Morales* on the pretrial publicity issue generally, then it becomes a given that neither the nature nor the extent of the notoriety warranted a presumption of prejudice. Likewise, it becomes a given that the glare of the limelight, though unfortunate, did not require the granting of a further adjournment of the trial date. *See Moreno Morales*, 815 F.2d at 739. All in all, we are left with but one fresh argument anent pretrial publicity: that the district court, on its own initiative, should have brought into sharper focus the possibility of a change of venue.

■ Boiled down to bare essence in this manner, the residue of the argument deserves little comment. The defendants had a constitutional right of vicinage—a right to be tried "by an impartial jury of the ... district wherein the crime shall have been committed, ...." U.S. Const., Art. VI. They could not have been compelled to accept an alternate venue, and they chose not to seek one. There is no question but that they were apprised of their rights. All of the defendants, not the least Reveron Martinez, were represented by qualified counsel. The government, in its objections to the defendants' motions for an additional continuance grounded on the intense publicity, pointed out explicitly that none of the defendants had moved for a change in venue. From aught that appears of record, the decision to forgo such a motion was a knowing one, akin to a deliberate tactical bypass.

Reveron Martinez offers no authority for the novel proposition that the district court erred by not acting *sua sponte* and directing the parties to focus on a change of venue. There is no such precedent, we suspect, because there is no such duty. We refuse needlessly to increase the heavy burdens already imposed upon trial judges in criminal cases. The district court, on these facts, did not commit reversible error in neglecting to raise the possibility of another venue on its own initiative.[3]

## II. EVIDENCE OF UNCHARGED CRIMES

■ Appellant claims that he was unfairly prejudiced by the admission into evidence of details concerning the brutal beat-

---

2. To be sure, there may be occasions when courts can—and should—loosen the iron grip of *stare decisis*. But any such departure "demands special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212, 104 S.Ct. 2305, 2311, 81 L.Ed.2d 164 (1984). *See also Ramos v. Beauregard, Inc.*, 423 F.2d 916, 917 (1st Cir.) (departure necessitates "compelling reasons [adequate to] outweigh the public interest in the stability of legal doctrine"), *cert. denied*, 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970). There has been no such showing here.

3. If a judge chooses unilaterally and gratuitously to inject her views into a case—views which run at cross purposes with the discernible strategy of defense counsel—she creates a risk that her concern may be perceived as meddling, or even as partisanship. Given the importance of studied neutrality on the part of the trial court, it makes eminently good sense to afford the judge considerable leeway in deciding how to handle such delicate matters.

ings administered to the two independentistas and the actual killings which followed.[4] The same point was raised—and rejected—in the earlier appeal. *Moreno Morales*, 815 F.2d at 739–40. We find that discussion to be dispositive of the issue.[5] We add only that, since *Moreno Morales* was decided, we have reaffirmed that "details of illegal acts, including murder, have been allowed, in the district court's discretion, to show the chain of events forming the context." *Real v. Hogan*, 828 F.2d 58, 61 (1st Cir. 1987). What we said in *Real* is equally apropos here: "A trial is a search for truth and cannot sensibly take place in a vacuum." *Id.* at 62.

Given appellant's approach to this reason of appeal, *stare decisis* applies. The decision to allow the evidence was within the district court's discretion.

## III.  INEFFECTIVE ASSISTANCE

Appellant contends that the performance of his trial counsel was so spavined as to comprise ineffective assistance of counsel. The touchstone of the law in this area is, of course, the Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, the defendant must demonstrate both significant attorney error and the existence of some reasonable probability that, had those mistakes not been made, the outcome of the proceeding would have been different. *Id.* at 687–94, 104 S.Ct. at 2064–68.

■ In this case, Reveron Martinez posits error in the dainty cross-examination of certain prosecution witnesses. He concedes, however, that this identical claim was earlier advanced by his codefendant, Angel Perez Casillas, and rebuffed by us.

*See Moreno Morales*, 815 F.2d at 751–52. We will not repeat what we said there, but will merely reiterate that it is sufficient unto the day.

■ In an effort to escape from the clutches of *stare decisis*, Reveron Martinez's appellate counsel offers some new grist for the mill: the accused "was not mentally competent to stand trial" and no "defense ... of insanity was ... made." Appellant's Brief at 11. This contention is unique to the present appellant. And, the record reflects, albeit sketchily, some history of mental illness.[6] Be that as it may, the suggestion that it was a serious error not to advocate a defense premised on insanity or diminished capacity is not properly before us. Whether or not such a claim has any merit—a matter as to which we express no opinion—it was not explicitly raised below. We therefore dismiss this aspect of the appeal without prejudice to subsequent proceedings, should appellant institute them, under 28 U.S.C. § 2255. *See United States v. Carter*, 815 F.2d 827, 829 (1st Cir.1987); *United States v. Kobrosky*, 711 F.2d 449, 457 (1st Cir.1983); *cf. Puleio v. Vose*, 830 F.2d 1197, 1201–02 (1st Cir.1987) (state prisoner must exhaust claim that counsel could not hear in state courts before premising ineffective assistance on this impairment for purposes of federal habeas review).

The claim of inadequate representation, fairly examined, is the source of no solace to Reveron Martinez.

## IV.  THE PERJURY CONVICTIONS

■ Appellant was found guilty of false swearing on several occasions, and challenges two of these verdicts (Counts 26 and

---

4. We find nothing to indicate that Reveron Martinez ever asked the trial court to exclude these gory details. We need not dwell on the possibility of a procedural default, however, because of our conclusion that the rulings of the court below were error-free.

5. To be sure, the evidence was admitted under Fed.R.Evid. 404(b), a device which requires the court to resort to the probative value/prejudicial impact balance envisioned by Fed.R. Evid. 403. *See United States v. Ingraham*, 832 F.2d 229, 235–37 (1st Cir.1987). It is *theoretically* possible that this balance may align itself

somewhat differently vis-a-vis each individual defendant. Yet, this defendant's appellate counsel conceded at oral argument that Reveron Martinez's assignment of error in this respect was indistinguishable from that previously advanced by the nine codefendants. Counsel's point was not that his client's posture was different, but that our earlier case (*Moreno Morales*, 815 F.2d at 739–40) was wrongly decided.

6. Indeed, the processing of the instant appeal was delayed because of an abortive suicide attempt.

27). He alleges insufficiency of the evidence. We look at each conviction separately, cognizant that we must at this stage assay the evidentiary details in the light most soothing to the prosecution. *United States v. Cintolo*, 818 F.2d 980, 983 (1st Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987). We will reverse only if the record, so viewed, is inadequate to support a finding of guilt beyond a reasonable doubt.

A. *Count 26.* In this count, appellant was charged with "knowingly mak(ing) a false material declaration" before a federal grand jury, in violation of 18 U.S.C. § 1623. The exchange upon which the accusation was based went as follows:

Q. At the scene of the shooting at Cerro Maravilla, when was the halt given? Was it before the persons got out of the "publico", or after they got out of the "publico"?

A. Well, as I declared previously, I am in a position which I couldn't see directly when they arrived. I only saw the vehicle pass by me. They went in reverse and parked itself in front of the station gate. It was there when colleague Colon [Berrios] came out and gave the halt. He shouted, "Halt, it is the police."

The prosecution was premised on the notion that the last two sentences of this excerpt were both material and knowingly false in that Colon Berrios never shouted "halt, it is the police" at Cerro Maravilla on July 25, 1978. Reveron Martinez argues that the government presented no evidence at trial sufficient to brand his statement as untrue.

■■■ In order to sustain a perjury charge, evasions are not enough. The government must show more than that the interdicted statement was unresponsive or guarded. At a bare minimum, the remark must have been literally false. *Moreno Morales*, 815 F.2d at 744; *United States v. Finucan*, 708 F.2d 838, 847 (1st Cir.1983). In addition, it must have been "knowingly" false. To constitute perjury, the defendant must have believed when he delivered his

testimony that it was apocryphal. The determination as to the defendant's state of mind—his belief in the untruthfulness of his statement—is one which a jury is "best equipped" to perform. *United States v. Lighte*, 782 F.2d 367, 372 (2d Cir.1986).

■■■ The seminal case in the modern law of perjury is *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed. 2d 568 (1973). (We note, parenthetically, that although *Bronston* involved a prosecution under 18 U.S.C. § 1621, its holding has equal applicability in terms of 18 U.S.C. § 1623. *See, e.g., United States v. Tonelli*, 577 F.2d 194, 198 (3d Cir.1978); *United States v. Kehoe*, 562 F.2d 65, 68 (1st Cir. 1977)). In *Bronston*, the Court held that a witness could not be convicted of "perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication." *Id.* 409 U.S. at 353, 93 S.Ct. at 597. The Court went on to observe:

A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether he does not believe [his answer] to be true.

*Id.* at 359, 93 S.Ct. at 600. It is only within the *Bronston* constraints that a jury is allowed to consider circumstantial evidence, such as "proof of a witness's motive to lie," *Lighte*, 782 F.2d at 373, when evaluating a perjury case.

We believe that, in this instance, it was not unreasonable for the jury to find appellant guilty on Count 26. The key phrase in the controverted exchange is *"the* halt" (emphasis supplied). The question inquired as to when *"the* halt" was given; the perjurious phrase in the reply was that "Colon came out and gave *the* halt." A reasonable inference may be drawn from the use of the article ("the") that there was only one command given. On such a reading, appellant's testimony came into direct conflict with that offered by Jose Montanez Ortiz,[7]

---

7. Jose Montanez Ortiz, a member of the police

force who was involved in the affair at Cerro

a policeman who testified at the trial that he was in charge of the officers at Cerro Maravilla and that it was he who yelled "halt" to the terrorists. If only one "halt" was given, and if the witness's trial testimony was believed, then the jury could rationally find that appellant lied.

The jury's conclusion appears all the more reasonable in view of the circumstantial evidence that appellant was trying to cover up the role that Montanez Ortiz actually played in the events at Cerro Maravilla. As we noted in *Moreno Morales,* "the record contained enough circumstantial evidence" to allow a conclusion that the defendants were endeavoring "to conceal the presence of Jose Montanez Ortiz at the shootings ... [and to] ... hid[e] the fact that Montanez Ortiz was at Cerro Maravilla and in command...." 815 F.2d at 747. Indeed, that appellant's answer fit hand-in-glove with the proven prevarication of his codefendant, Bruno Gonzalez (who swore that Colon Berrios, not Montanez Ortiz, was in charge of the agents at the tower),[8] was in itself damning. The common substitution of the fictional leader (Colon Berrios) for the actual leader (Montanez Ortiz) was sufficiently uncommon to support a (reasonable) conclusion that a collusive falsification of events was being presented. To view these "slips" as "coincidental" stretches common sense well past any acceptable frontier—especially because there was testimony that Montanez Ortiz had informed at least one of the conspirators that he did not "want to appear" in connection with the affair. *Moreno Morales,* 815 F.2d at 747 n. 31.

We fully agree with the District of Columbia Circuit that:

> Perjury cases, like all criminal cases, are susceptible to proof by circumstantial evidence, and in fact are peculiarly likely to be proven in this manner because one of

the elements of the crime is that the defendant knew his statement was false when he made it.

*United States v. Chapin,* 515 F.2d 1274, 1278 (D.C.Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). The case at bar illustrates the point quite well: taking into account the totality of the evidence, direct and circumstantial, and giving due weight to the indirect evidence anent appellant's motive to falsify, the proof was adequate to underbrace a guilty verdict on Count 26. *Compare Lighte,* 782 F.2d at 373; *United States v. Natelli,* 527 F.2d 311, 318 (2d Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).[9]

B. *Count 27.* Under this count, appellant was convicted of violating 18 U.S.C. § 1621 by testifying falsely during a deposition taken in connection with the civil action filed in federal district court by the survivors of the slain men. The question asked was: "Did you hear a second volley of shots?" Appellant replied: "After that, the shots stopped and there was not any more shots." This rejoinder, Reveron Martinez urges, was literally true—and therefore, in his view, cannot sustain the weight of a perjury conviction. We agree.

The government wishes us to read this answer as if appellant had said that after the first volley, there was no second volley. But, we cannot take such liberties with language. The term "that," as used in the response, *apparently* referred to the object of the question: the second volley. Since the matter was not contemporaneously pursued, the government is saddled with what was *said,* rather than what might have been meant. It was literally true that, after the second volley of shots sounded, no more shots were fired. No less an authority than the Court has taught that

---

Maravilla, was one of those who blew the whistle on what had transpired. *See Moreno Morales,* 815 F.2d at 729.

8. Gonzalez's conviction for perjury, based on this very comment, was affirmed in our previous decision. *Moreno Morales,* 815 F.2d at 747–48.

9. Appellant eschews any frontal challenge to the materiality of the false statement. In any event, that argument was made by his codefendants—and we decisively rejected it. *See Moreno Morales,* 815 F.2d at 747–48. We incorporate that reasoning fully in our consideration of Reveron Martinez's case. *See also United States v. Scivola,* 766 F.2d 37, 44 (1st Cir.1985).

the reach of 18 U.S.C. § 1621 does not extend "to answers unresponsive on their face but untrue only by 'negative implication' ". *United States v. Bronston*, 409 U.S. at 361, 93 S.Ct. at 601. *See also Moreno Morales*, 815 F.2d at 744; *Finucan*, 708 F.2d at 847–48; *United States v. Abrams*, 568 F.2d 411, 422 (5th Cir.), *cert. denied*, 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). The rule holds "even if the answer is intentionally misleading," so long as literal truth inheres. *Id.* When a witness bobs and weaves, it is the questioner's obligation to get the proper bearings; a federal perjury prosecution is medicine too powerful to be dispensed casually as a quick fix for unresponsiveness. As the Court has taught:

> If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.

*Bronston*, 409 U.S. at 358–59, 93 S.Ct. at 599–600.

These precepts, we think, are controlling here. We have painstakingly studied the government's argument in opposition—its claim that appellant's explanation of the challenged reply is "entirely implausible"— but we remain unpersuaded. To be sure, a witness cannot twist the meaning of a question in his own mind into some totally unrecognizable shape and then hide behind it. Assuming that the question is reasonably clear, the interpretation given it must have some patina of plausibility. But that rather minimal standard appears to have been achieved in this instance. The rather tenebrous rejoinder made by the defendant can sensibly be interpreted as meaning: "Yes, I heard the second volley of shots, but there were none fired thereafter."

Taken in that (altogether plausible) sense, the answer would be nonresponsive—but literally true. And the questioner, put to his mettle, failed to pin the matter down. A perjury conviction based upon such shaky underpinnings cannot stand.[10]

## V. THE CONSPIRACY CHARGE

■ Reveron Martinez contends that the evidence in the case was insufficient to support his conviction for conspiracy. The government's rebuttal is twofold: first, that this argument is entirely foreclosed by *stare decisis;* and if not, that the proof was ample to allow the conviction to stand.

We do not believe that the net of *stare decisis* can be cast quite so broadly as the government fondly hopes. While this doctrine "makes each judgment a statement of the law, or precedent, binding in future cases before the same court", it nevertheless "deals only with law, as the facts of each successive case must be determined by the evidence adduced at trial...." 1B J. Moore, W. Taggart and J. Wicker, *Moore's Federal Practice* ¶ 0.401 at 3 (2d ed. 1985). Although the conspiracy convictions of most of the codefendants were affirmed in *Moreno Morales*, it is still an open question as to whether or not there was evidence sufficient to show that Reveron Martinez became a member of, and participant in, the undertaking. We perforce reach the merits of the claim.

■ We start this odyssey by recognition of the familiar principle that "[p]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances' ". *United States v. Notarantonio*, 758 F.2d 777, 789 (1st Cir.1985) (citations omitted). In this case, the circumstantial evi-

---

10. The prosecution relies heavily on *United States v. Bell*, 623 F.2d 1132 (5th Cir.1980), but it mishears for whom the *Bell* tolls. There, defendant was asked whether he had "records that are asked for in the subpoena?" He replied that he did not. The proof showed that his files contained the subpoenaed records. *Id.* at 1134. Nevertheless, Bell maintained that his answer was literally true because "he thought he was being asked whether he had brought the records with him that day, and not, as the government contend(ed), whether he had any such records ... at his office or anywhere else in the world." *Id.* at 1135. The Fifth Circuit believed that Bell's interpretation of the (somewhat inartful) question was "at least as reasonable as the government's interpretation," *id.* at 1137, and overturned the conviction. *Id.* The precedential value of the opinion appears to us to ring in Reveron Martinez's favor vis-a-vis Count 27.

dence linking appellant to a conspiracy to cover up the affair at Cerro Maravilla is overpowering. Proof was presented which showed that appellant met with a group of his fellow police officers on August 2, 1978 to discuss and agree upon an essentially apocryphal version of the events of July 25, 1978. His Count 26 perjurious statement to the federal grand jury, *see supra* Part IV–A, had the effect of furthering the concealment and could logically be thought a step in the plot. Indeed, the lie as to who cried "halt!" exactly parallels the falsehood voiced by codefendant Gonzalez (in that he and appellant each substituted Colon Berrios's name for that of Montanez Ortiz). As we observed earlier, "[t]he similarity of their perjury gives rise to the inference that they were all in league." *Moreno Morales*, 815 F.2d at 750–51. In addition, other perjurious statements attributable to Reveron Martinez should not be overlooked. He was, for example, convicted of false swearing on Count 24 for saying that the victims "never stopped resisting" and that "we [the police] were defending ourselves." He was likewise convicted on Count 25 for flatly denying that any police agent beat, struck, kicked, or in any way abused the two independentistas. This jiggery-pokery clearly had a purpose: to obscure the blackguardly nature of what had transpired and the role played by appellant and his fellow officers in the cold-blooded killings. The jury could well have viewed the statements as strong evidence that Reveron Martinez was hip-deep in the charged conspiracy.

There was, in short, ample evidence to sustain the conviction on this charge.

## VI. SENTENCING

■ Appellant claims that the district court abused its discretion in imposing a sentence for his conspiracy conviction which ran consecutive to the sentences for perjury. Because the latter convictions formed the basis for the conspiracy convic-

tion, he asseverates, the sentences should be merged. The point is utterly without merit.

We recently rejected a conceptually analogous plea in *United States v. Fermin Castillo*, 829 F.2d 1194, 1199–1200 (1st Cir. 1987). We can add little to the analysis undertaken there. The conspiracy charge represented a distinct crime; it "require[d] proof of a fact which the other[s] did not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (quoting *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911)). Nothing in the law prohibits consecutive sentences for separate crimes "which arise out of a single scheme and course of conduct." *Fermin Castillo*, at 1199. *See also United States v. Ouimette*, 753 F.2d 188, 193 (1st Cir.1985).[11] The sentences meted out were well within the statutory maxima and were not in any way disproportionate to the villainy of the offenses.

At bottom, appellant's jeremiad reduces not to a proposition of law, but to "the sort of purely philosophical argument" which we have said is "better addressed to Congress than the courts." *Fermin Castillo*, at 1200. With the exception of Count 27— as to which the sentence previously imposed must be vacated, *see supra* Part IV–B—no sound basis has been demonstrated for setting aside the district court's sentencing determinations. *See generally Moreno Morales*, 815 F.2d at 752; *United States v. Francesco*, 725 F.2d 817, 823 (1st Cir.1984).

## VII. CONCLUSION

We need go no further. We have considered all of appellant's arguments, including but not limited to those limned above, and find them to be wanting. Accordingly—apart from the conviction on Count 27, which we are constrained to reverse, *see*

---

**11.** Reveron Martinez's emphasis on our decision in *United States v. Rivera Diaz*, 538 F.2d 461 (1st Cir.1976), is misplaced. There, we held that the district court erred in imposing consecutive sentences for two conspiracy convictions, where the evidence showed only a single agreement between the defendants. *Id.* at 466. Unlike in *Rivera Diaz*, however, Reveron Martinez and his codefendants were charged with, convicted of, and sentenced for, but a single conspiracy (albeit one with multiple objects).

*supra* Part IV–B—the judgment below weathers the storm.

Appeal No. 85–1467 is *dismissed for mootness.*

In Appeal No. 86–1968, the judgment is *reversed* as to Count 27, and *affirmed* in all other respects.

*So ordered.*

TORRUELLA, Circuit Judge (concurring in part; dissenting in part).

I disagree that our decision in *United States v. Moreno Morales*, 815 F.2d 725 (1st Cir.1987), constitutes *stare decisis* on the venue issue raised by appellant. I also disagree with my brethren's conclusions as to appellant's conviction under Count 26 of the indictment. However, I concur with the majority's ruling on Count 27 thereof.

I

It is difficult to quarrel with the statements of general principle in the majority's opinion as respects the doctrine of *stare decisis. Ante* at 687. In theory, *stare decisis* is a tenet mandated by the need for stability in the law and predictability in the outcome of social interchange. In a criminal law context, however, mechanical application of this principle can deprive a defendant of a more fundamental due process interest, the right to a day in court. In practice the doctrine of *stare decisis* is as often used as the tool of expediency to reach preconceived results, as for its legitimately intended purpose. Although in the present appeal and that of *Moreno Morales* there is the need to call upon the doctrine of *stare decisis*, it is in a manner different from that proposed by the majority.

If the doctrine of *stare decisis* were to be uniformly applied to this case, and in passing, had been applied to *Moreno Morales*, the majority would perforce have concluded that our ruling in *Delaney v. United States*, 199 F.2d 107 (1st Cir.1952), was controlling. Following that case it would necessarily have to reverse all of the convictions stemming from the Cerro Maravilla incident. I will not recount the facts and

circumstances of *Delaney* but will limit my statements to saying that the facts in *Delaney*, a case which "has been cited with approval not only by the Supreme Court, but also by most circuits, including our own," [1] cannot be differentiated from those in the present appeal. I invite the reader to judge for himself. *See Moreno Morales, supra.* After such an exercise I am left with the distinct impression that *stare decisis* was somehow left at the starting gate. *See Moreno Morales*, 815 F.2d at 738.

There has been an even more direct and egregious violation of the doctrine of *stare decisis* by the majorities in this case and in *Moreno Morales.* These violations are particularly obnoxious because they concern the very issue raised by appellant in this appeal. In the civil version of the Cerro Maravilla incident this court ruled that "Puerto Rico is singularly unsuited to a change in venue ..." and, therefore, that such an option "would be unavailing." *In re San Juan Star Co.*, 662 F.2d 108, 117 (1st Cir.1981). *See Moreno Morales* at 772–73 (Torruella, J., dissenting). This being the law in this circuit at the time, and particularly considering the close relationship between the parties in the civil and criminal cases, it is beyond cavil that the criminal defendants in this case and *Moreno Morales* relied upon this pronouncement in not seeking a change of venue, *i.e.*, relied on its *stare decisis* value. Yet in a unique and picturesque circumvention of this doctrine this Court's panel majority in *Moreno Morales* stated that its "observation" regarding the inappropriateness of requesting a change in venue in Puerto Rico was not a "major pronouncement," and that it therefore had no binding effect on the panel decision. *Moreno Morales*, 815 F.2d at 737. *Cf., id.* at 772 (Torruella, J., dissenting).

Notwithstanding the above, however, I suggest that even this double-standard application of *stare decisis* is irrelevant to the precise issue raised by appellant. That issue (whether the district court *sua sponte* should have, in view of the massive pretrial

---

**1.** *Moreno Morales,* 815 F.2d at 775 (Torruella, J.,      dissenting).

publicity, raised the possibility of a change in venue) was never litigated or decided in *Moreno Morales*, a point apparently recognized by the majority opinion, although somewhat begrudgingly. *Ante* at 687. If that be the case, appellant's "one fresh argument," *id.*, is entitled to somewhat more in-depth consideration than that accorded to it by the majority. *Ante* at 687–88.

The majority chastises appellant because he fails to offer any authority for the "novel proposition" that the district court erred by not acting *sua sponte* in directing the parties to focus on a change of venue. With due respect, I suggest that if there has been any "novel proposition" in these cases, none is surpassed by the majority's ruling in *Moreno Morales, singularly unsupported by any authority*, that a criminal defendant must choose between his right to an impartial trial and his right to be tried by his peers, and that by failing to seek a change of venue he waives his right to an impartial trial. *Moreno Morales*, 815 F.2d at 737–39. *Cf., id.* at 772–74 (Torruella, J., dissenting). If there be a "novel proposition" it is the tragic comedy of errors through which the appellant has been led by this court's prior rulings to believe that no change of venue was appropriate for a case tried in Puerto Rico, *In re San Juan Star, supra*, only to be penalized thereafter for relying on such *stare decisis*. As a minimum requirement of due process, a criminal defendant who has relied on a pronouncement of this court, whether *ex post facto* we choose to label it as "minor" or not, should be given the opportunity to rectify his position before we pull the judicial rug out from under him.

Furthermore, the idea that these circumstances require affirmative judicial action to alert a bemused defendant against the unconscious waiver of a basic constitutional right is hardly "novel," particularly in this circuit. The district court in *Delaney* specifically urged the defendant to file for a change of venue because of pretrial publicity. *Delaney*, 199 F.2d at 115. Yet, notwithstanding his failure to follow the court's prompting, we reversed and or-

dered a new trial. If Delaney was granted a new trial by this court in those circumstances, can there be any valid reason for not granting a new trial here, where not only was a change in venue not suggested by the trial court but circuit precedent indicated that such a move was inappropriate? Other courts have also invited such motions under similar circumstances. *See Dennis v. United States*, 302 F.2d 5, 8 (10th Cir. 1962), *rev'd on other grounds*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

The unusual setting of this trial, involving what the district court characterized as "*the* media event of the years 1983–1984," *United States v. Pérez-Casillas*, 593 F.Supp. 794, 798 (D.C.P.R.1984) (emphasis in the original), mandates that the trial court have taken this minimal action to prevent appellant from unwittingly losing fundamental rights. That the district court failed to so act is most probably due also to *its* reliance on our pronouncements in *San Juan Star*. This brings the ball back to our court. It is incumbent upon this court to face its errors squarely and to correct this manifest injustice, without avoiding responsibility by reliance on a hyper-technical subterfuge.

## II

I agree with the majority's restatement of the law of perjury to the effect that to sustain such a charge the interdicted statement "must be literally false." *Ante* at 689; *Moreno Morales*, 815 F.2d at 744; *United States v. Finucan*, 708 F.2d 838, 847 (1st Cir.1983). I do not believe that this test is met by the proof presented in connection with Count 26 of the indictment.

The alleged perjury in appellant's testimony centers around his answer that "Colón came out and gave *the* halt" (emphasis supplied) to a question as to "when was the halt given?" The majority concludes that "a reasonable inference may be drawn from the use of the article ("the") that there was only one command given." *Ante* at 689. To say that Colón gave *the* halt, however, is not to say that only one halt was given. Thus, the answer at worst

was unresponsive. *Bronston v. United States*, 409 U.S. 352, 359, 93 S.Ct. 595, 600, 34 L.Ed.2d 568 (1973).

It would be perfectly appropriate, for example, both in English and Spanish[2] to say "three persons gave *the halt*" or "A gave *the halt* five minutes before B gave *the halt*." The halt could be given several times, or by several people. The testimony of Montañez that he gave "the halt," and the testimony of Reverón that Colón gave "the halt" are simply not inconsistent, as the majority finds.

The majority's reference to defendant's motive for committing perjury, *ante* at 690, is equally relevant for an unresponsive or incomplete answer and thus lends no support to the majority's conclusion. The jury had no basis to find, beyond a reasonable doubt, that the answer was literally false. Therefore, the defendant was entitled to acquittal on Count 26.

### III

For the reasons stated above, I am of the view that all of appellant's convictions should be reversed.

---

2. The original testimony in this case was in Spanish. The peculiar usage of "el alto" and "the halt" is the same in both languages.