976 F.2d 724
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Rafael Moreno MORALES, Petitioner, Appellant,
v.
UNITED STATES OF AMERICA, Respondent, Appellee.
 No. 92-1157.
 United States Court of Appeals,
First Circuit.
 October 1, 1992
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Rafael Moreno Morales on brief pro se.
 Daniel F. Lopez Romo, United States Attorney, Jose A. Quiles-Espinosa, Assistant United States Attorney, and Jeanette Mercado-Rios, Assistant United States Attorney, on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Boudin, Circuit Judge.
 Per Curiam.
 
 
 1
 In 1985, in connection with his involvement in the infamous Cerro Maravilla incident, Rafael Moreno-Morales was convicted of six federal offenses: one count of conspiring to obstruct justice, give false testimony and suborn perjury, in violation of 18 U.S.C. § 371, and five substantive counts of perjury, in violation of 18 U.S.C. §§ 1621 & 1623. After his convictions were affirmed on appeal, United States v. Moreno Morales, 815 F.2d 725 (1st Cir.), cert. denied, 484 U.S. 966 (1987), he filed the instant pro se petition under 28 U.S.C. § 2255 for post-judgment relief. Of the various claims presented in his petition, he has preserved three for appeal: (1) that two of the perjury convictions involved multiplicitous counts and thereby violated Double Jeopardy; (2) that another of the perjury convictions was invalid because his testimony was literally true; and (3) that his attorney rendered ineffective assistance on the direct appeal. We find each of these contentions to be without merit, and therefore affirm.
 
 I.
 
 2
 The multiplicity argument need not detain us. In Count 14, petitioner was charged with a violation of 18 U.S.C. § 1623 for testifying falsely before a federal grand jury on January 9, 1980. And in Count 18, he was charged with a violation of 18 U.S.C. § 1621 for testifying falsely in a civil deposition on March 26, 1980, conducted as part of a federal civil rights action. Petitioner contends that the two counts involved the same testimony and therefore did not charge separate offenses. In Quiles-Hernandez v. United States, No. 90-1804 (1st Cir. 1991), we rejected an identical argument advanced by one of petitioner's codefendants. We first noted that such a challenge had not been raised prior to trial, as required under Fed. R. Crim. P. 12(b)(2), and therefore had been waived. Id. at 4-5. We also determined that the claim was in any event meritless: since one count involved statements made to the grand jury, while the other involved statements offered at the civil deposition three months later, separate offenses had been committed. Id. at 6-8. The same analysis controls here.
 
 II.
 
 3
 Petitioner's "literal truth" claim involves the following exchange which occurred during the deposition on March 26, 1980:
 
 
 4
 Q. What was the first contact on July 25th with other persons, other than the ones that were stationed at Toro Negro?
 
 
 5
 A. Well, at almost twelve noon Commander Perez and Lieutenant Quiles and agents from Ponce and other personnel arrived there.
 
 
 6
 Q. How many agents from Ponce?
 
 
 7
 A. I think two.
 
 
 8
 Q. What other personnel?
 
 
 9
 A. Perez, Quiles, Carmelo Cruz and two other agents from Ponce. I do not recall if there was anyone else.
 
 
 10
 The indictment charged, in Count 17, that the underlined answer was perjurious, in that "Carmelo Cruz did not come from Ponce to Toro Negro with [Perez and Quiles], but that Nelson Gonzalez-Perez and Jose Montanez-Ortiz came to Toro Negro with [Perez and Quiles]." Petitioner contends that he reasonably understood the final question as asking-not what personnel arrived from Ponce at noon with Perez and Quiles-but rather what personnel were present at Toro Negro at that time. And since the evidence established the presence of Carmelo Cruz at that place and time, he argues that his response was literally true, even if misleading, and thus not perjurious. See, e.g., Bronston v. United States, 409 U.S. 352 (1973).
 
 
 11
 Generally, "where an answer may or may not be false depending upon possible interpretations of an ambiguous question, it is for the jury to decide whether the defendant has committed perjury." United States v. Finucan, 708 F.2d 838, 848 (1st Cir. 1983); accord, e.g., Moreno Morales, 815 F.2d at 745 n.26. An exception to this rule holds that, where a question is so vague under all the circumstances as to be "fundamentally ambiguous," the response cannot be perjurious as a matter of law. See, e.g., United States v. Glantz, 847 F.2d 1, 6 (1st Cir. 1988) ("the jury cannot be allowed to guess at the witness' understanding of a clearly ambiguous question"); United States v. Yasak, 884 F.2d 996, 1002-03 (7th Cir. 1989); United States v. Lighte, 782 F.2d 367, 375-76 (2d Cir. 1986); United States v. Martellano, 675 F.2d 940, 942-43 (7th Cir. 1982).
 
 
 12
 We find no such fundamental ambiguity in the question at issue here. At the beginning of the exchange, petitioner asserted that Perez and Quiles arrived at almost twelve noon with "agents from Ponce" and "other personnel." The next two inquiries asked petitioner to elaborate on this statement. In both questions ("How many agents from Ponce?"; "What other personnel?"), the questioner tracked the very language just employed by petitioner. We think it plain that the questioner thereby implicitly incorporated the factual predicates contained in petitioner's earlier response-i.e., that the question asked was: "What other personnel [arrived with Perez and Quiles at noon]?" Whatever lack of clarity may have been lent by the questioner's failure to reiterate these predicates aloud, we do not find the question so fundamentally ambiguous as to have warranted acquittal as a matter of law. See, e.g., United States v. Doherty, 867 F.2d 47, 69 (1st Cir.) (Bronston did not hold that "a defendant is immune from prosecution for perjury whenever some ambiguity can be found by an implausibly strained reading of the questions he is asked"), cert. denied, 492 U.S. 918 (1989).[1]
 
 III.
 
 13
 In Moreno Morales, we heard the appeals of petitioner and eight of his codefendants on a consolidated basis. Petitioner was there represented by his trial counsel. Petitioner now contends, in his final argument, that counsel provided ineffective assistance during that appeal. He asserts that counsel failed to raise any specific challenges to petitioner's convictions, but instead simply joined in the generalized arguments advanced by other counsel.[2] He suggests that counsel never filed a separate brief at all on his behalf. And he states that counsel failed to consult with him at any time after the verdict, such that petitioner (1) had no input into the choice of issues to be raised, (2) never was shown a copy of the brief, and (3) only learned through third parties of the results of the appeal and the subsequent application for certiorari. Such conduct, petitioner alleges, constituted a constructive denial of the assistance of counsel, in violation of the Sixth Amendment.
 
 
 14
 We disagree. We see nothing in the record reflecting an effective abandonment by counsel of his client on appeal. To the contrary, the records of this court reveal that petitioner's attorney did file a separate appellate brief. Furthermore, counsel's choice of issues to pursue on appeal is one presumed to fall "within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). And that presumption is bolstered here by three factors. First, counsel obviously was conversant with all facets of the case, having represented petitioner at trial. Second, petitioner has voiced no complaint as to counsel's trial performance. And third, he has failed to identify any meritorious (or even arguably meritorious) issues that were omitted from the direct appeal.
 
 
 15
 To be sure, counsel's failure to consult with petitioner while preparing the appeal is a less than commendable practice. Yet even if such conduct is deemed deficient, petitioner has not shown that he was thereby prejudiced. See, e.g., United States v. Campa, 679 F.2d 1006, 1014 (1st Cir. 1982) (defendant has "burden of establishing actual prejudice" stemming from inadequate contact with attorney); McCarthy v. United States, 764 F.2d 28, 31 (1st Cir. 1985) (per curiam) (same). As mentioned, petitioner has not identified any appellate issue that should have been raised earlier, nor has he otherwise explained how the lack of consultation with counsel, following trial, hampered the prosecution of his appeal. Under these circumstances, we perceive no constitutional infirmity in the appellate representation received by petitioner.
 
 
 16
 Affirmed.
 
 
 
 [1]
 While petitioner does not otherwise challenge the sufficiency of the evidence in this regard, we might add that the perjurious statement here tied directly into a coverup scheme concocted by the defendants. As explained in Moreno Morales, the evidence showed that part of the coverup was to conceal the presence of Montanez at the shootings by "substituting Cruz in his place." 815 F.2d at 747-48; see alsoUnited States v. Reveron Martinez, 836 F.2d 684, 690 (1st Cir. 1988); Quiles-Hernandez, supra, slip op. at 6 n.5. That petitioner intended to testify falsely regarding Cruz' involvement is plainly inferable from such evidence
 
 
 [2]
 In our decision, we noted that Moreno Morales, along with other defendants, "did not appeal on specific grounds" as to the perjury counts, but did "appeal on more general grounds." 815 F.2d at 742 n.21