**Daniel J. GATELY, et al. Plaintiffs,**

**v.**

**COMMONWEALTH OF MASSACHU-SETTS, Thomas Rapone, Secretary of Public Safety, and Francis McCauley, Executive Director, Massachusetts State Board of Retirement, Defendants.**

**Civ. A. No. 92–13018–MA.**

United States District Court,
D. Massachusetts.

Dec. 30, 1992.

James B. Conroy, and Katherine P. Parks, Donnelly, Conroy & Gelhaar, Boston, MA, for plaintiffs.

Thomas A. Barnico, Attorney General's Office, and Deborah S. Steenland, Asst. Atty. Gen., Boston, MA, for defendants.

MEMORANDUM AND ORDER

MAZZONE, District Judge.

This action is brought by officers of the former Metropolitan District Commission Police and Registry of Motor Vehicles Law Enforcement Division. Pursuant to chapter 412 of the Massachusetts Acts of 1991, those forces, along with the Capitol Police, are to be merged with the Division of State Police to form the consolidated Department of State Police. *See* 1991 Mass.Acts ch. 412, § 1. This consolidation began last July. Section 122 of chapter 412 mandates that all members of the consolidated Department of State Police who will have reached their fifty-fifth birthday on or before December 31, 1992 shall retire by that date. The plaintiffs allege that this requirement contravenes the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and request injunctive relief.

The factual background of this case is as follows. Prior to the enactment of chapter 412, the four law enforcement agencies

were operated separately. Applicable Massachusetts statutes provided that Metropolitan and Registry officers were required to retire at age 65. *See* Mass.Gen.L. ch. 32, § 69(d) (repealed by ch. 412, effective July 1, 1992). State Police officers were compelled to retire at age 50. *See* Mass.Gen.L. ch. 32, § 26(3)(a); *Mahoney v. Trabucco,* 738 F.2d 35 (1st Cir.) (applying the rational relation standard to uphold a mandatory retirement age of 50 for the State Police), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Chapter 412 mandates retirement at age 55 across the board, thereby adding five years to the employment expectations of former State Police officers, but lopping ten years off those of the former Registry and Metropolitan officers.

The plaintiffs allege that this mandate violates the ADEA, which makes it unlawful for employers to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The defendants respond by arguing that this court's hands are tied by *Mahoney v. Trabucco,* 738 F.2d 35 (1st Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), and *EEOC v. Trabucco,* 791 F.2d 1 (1st Cir. 1986), in which the First Circuit rejected challenges under the ADEA to the mandatory retirement of pre-consolidation State Police officers at the age of 50 on the grounds that being younger than 50 was a bona fide occupational qualification ("BFOQ") for that occupation. Because the retirement deadline, December 31, 1992, is imminent, and because the defendants assert that officers age 55 or older who do not retire voluntarily on December 31 will become ineligible for the 80% pension provided in chapter 412, section 122, the plaintiffs request injunctive relief.

In order for a preliminary injunction to issue, the plaintiffs must meet this circuit's well-established four-part standard: 1) that plaintiff will suffer irreparable injury if the injunction is not granted; 2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; 3) that plaintiff has exhibited a likelihood of success on the merits; and 4) that the public interest will not be adversely affected by the granting of the injunction.

*Asseo v. Centro Medico Del Turabo, Inc.,* 900 F.2d 445, 454 (1st Cir.1990) (citing *Women's Community Health Ctr., Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979), quoted in *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981)). Because factors one, two, and four are closely interrelated in this case, they will be dealt with first.

1. *Irreparable Injury*

Plaintiffs' claims of irreparable injury focus mainly upon the loss of status and satisfaction in their work they will suffer if they are forced into early retirement. This is harm for which money does not adequately compensate. As the defendants correctly note, reliance on this factor might mitigate in favor of an injunction in every employment discharge case. However, given the balancing nature of the second factor in the preliminary injunction test, this is not necessarily a drawback.

The oldest plaintiffs would suffer the most if forced to retire: in the event they ultimately prevail and are entitled to be reinstated, that event may occur after they have surpassed the new retirement age, whatever it is determined to be. Thus, depending upon the length of the litigation, reinstatement may not be an available remedy for some plaintiffs. This consideration mitigates in favor of granting injunctive relief. *Cf., e.g., EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037, 1044 (6th Cir.1981) (holding that plaintiff failed to make required showing of irreparable harm where reinstatement was available remedy). In addition, time spent away from the force will impair the plaintiffs' ability to stay in touch with new developments, especially during this time of transition, thus impairing their effectiveness and that of the State Police as a whole if and when they are ultimately reinstated.

■ Although plaintiffs forced to retire would be eligible for a pension equal to 80% of their regular compensation, and might be eligible for unemployment benefits, most of them would probably experience a drop in income. This, however, is not considered an irreparable injury warranting injunctive relief. *See Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

### 2. *Balancing of Harms*

Although the plaintiffs' claims of irreparable injury are not overwhelming, the harm to them of denying an injunction does seem considerably to outweigh that to the defendants of granting one. Colonel Charles F. Henderson, the Executive and Operational Head of the Department of State Police and the officer in charge of the consolidation, attests that "an order preventing the timely mandatory retirement of officers 55 years of age and older would obstruct and delay the planned implementation of a staffing pattern as authorized by Chapter 412." Affidavit of Colonel Charles F. Henderson, ¶ 8. However, as Colonel Henderson subsequently notes, only thirty of the plaintiffs in this action are currently fifty-five or older. *Id.,* ¶ 13. Surely it will not drastically impair "the morale of the rank and file membership," *id.,* ¶ 8, to continue them in their current positions during the course of this litigation. It is clear that whether an injunction is granted or not, one side will be greatly inconvenienced, but given that the Commonwealth has long employed Metropolitan, Capitol, and Registry officers between 55 and 65 years of age, some of whom had duties indistinguishable from those of the State Police, *see* Affidavit of Salvatore Colozzi, ¶ 3, it does not seem unduly burdensome to ask that they be employed a bit longer.

Moreover, it is in the interests of all parties that the consolidated State Police experience as little dislocation as possible during the course of this litigation. The plaintiffs' argument that the potential reinstatement of these officers at some point in the future would cause them, their colleagues, and those who have assumed their commands considerably more disruption than their removal in the event that the defendants ultimately prevail seems convincing.

### 3. *The Public Interest*

While the public has a compelling interest in the continued efficient provision of law enforcement services, it also has a compelling interest in eradicating age discrimination. It seems unlikely that the presence of thirty extra officers on our streets, albeit officers in their late fifties and early sixties, will appreciably compromise the public safety. The unceremonious sacking of thirty officers who were deemed capable of working until age 65 when they wore the uniforms of the Metropolitan and Registry Police, however, would seem to call into question our commitment to generational fairness.

### 4. *Likelihood of Success on the Merits*

The question of the plaintiffs' likelihood of success on the merits is a close and complicated one critical to this inquiry. *See Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985) (stating that the First Circuit regards the probability-of-success factor as critical). A brief survey of the substantive law is therefore in order.

Although the ADEA prohibits employers from firing or otherwise discriminating against employees because of their age, the Act includes a narrow exception. The BFOQ exception to the ADEA provides that it shall not be unlawful for an employer "to take any action otherwise prohibited under ... this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age...." 29 U.S.C. § 623(f)(1).

The defendants argue that this case is controlled by a previous First Circuit case which presented almost exactly the same issues, *Mahoney v. Trabucco,* 738 F.2d 35 (1st Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). In that case, the First Circuit rejected an ADEA

challenge to a mandatory retirement age of 50 for preconsolidation State Police officers, accepting the Commonwealth's argument that being under age 50 was a BFOQ for that occupation.[1] In upholding the mandatory retirement statute, the First Circuit applied what it called the "generally-accepted" two-prong test for evaluating the adequacy of a BFOQ defense:

> an employer [1] must show that the age qualification is reasonably related to the essential operation of its business, and [2] must demonstrate[ ] either that there is a factual basis for believing that all or substantially all persons above the age limit would be unable to effectively perform the duties of the job, or that it is impossible or impracticable to determine job fitness on an individualized basis.

*Mahoney*, 738 F.2d at 37 (internal quotations and emphasis omitted). The defendants argue that *Mahoney* is binding on this court under the principles of *stare decisis*, and thus that it determines the outcome of this case.

The controlling Supreme Court cases in the area of BFOQs are *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985), and *Johnson v. Mayor and City Council of Baltimore*, 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985). Those cases settled previously unresolved issues concerning the standards governing the use of the BFOQ defense in cases affecting public safety. *Criswell*, decided the year after *Mahoney*, rejected the lenient reasonable relation standard used by the First Circuit in the first prong of its test. *See Mahoney*, 738 F.2d at 37 (stating that an employer must show that the age qualification is "reasonably related" to the operation of its business). *Criswell* adopted a stricter standard, first articulat-

ed by the Fifth Circuit in *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir.1976), which more closely tracks the language of the ADEA: "[t]he BFOQ standard adopted in the statute is one of 'reasonable necessity,' not reasonableness." *Criswell*, 472 U.S. at 419, 105 S.Ct. at 2754.[2] An age qualification can be reasonably necessary only when the employer has no alternative but to rely on age as a proxy for safety-related job qualifications. *Id.* at 414, 105 S.Ct. at 2751. Using age as a proxy is justified under only two conditions: a) when the employer has " 'reasonable cause to believe, that is, a factual basis for believing, that all or substantially all [persons over the age qualifications] would be unable to perform safely and efficiently the duties of the job involved' "; or b) when "it is 'impossible or highly impractical' to deal with the older employees on an individualized basis." *Id.* (quoting *Tamiami*) (footnotes and internal quotations omitted). The Supreme Court stated that in order to be valid, "age qualifications [must] be something more than 'convenient' or 'reasonable'. . . ." *Id.* at 414, 105 S.Ct. at 2751. It cautioned that "the BFOQ exception 'was in fact meant to be an extremely narrow exception to the general prohibition' of age discrimination contained in the ADEA." *Id.* at 412, 105 S.Ct. at 2751 (quoting *Dothard v. Rawlinson*, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977)). Thus, while *Criswell* preserved the second prong (with its two alternatives) of the *Mahoney* test intact, it soundly rejected the reasonableness standard of its first prong.

*Johnson*, which held that a federal statute requiring federal firefighters to retire at 55 did not establish that age as a BFOQ

---

1. The main issue in *Mahoney* was whether the word "occupational" in the BFOQ exception to the ADEA should be analyzed broadly, in terms of the qualifications necessary to perform as a generic police officer, or narrowly, in terms of the qualifications necessary to perform a particular assignment, such as liaison officer. The First Circuit held that all State Police officers should be treated as belonging to one occupation, regardless of their particular individual assignments. This holding, however, is not implicated in the case at hand.

2. The First Circuit in *Mahoney* cited *Tamiami* but drew the "reasonably related" language from two other cases, *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743, 753 (7th Cir.1983) (disagreed with by *Johnson*), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983), and *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (an equal protection case).

for nonfederal firefighters, is concerned with evidentiary issues. The Court stated there that a "particularized, factual showing" is required in order to uphold an age limit as a BFOQ. *Johnson,* 472 U.S. at 362, 105 S.Ct. at 2722. Furthermore, the age limit must be based on the demands of the occupation, and not on "factors other than conclusive determinations of occupational qualifications...." *Id.* at 369, 105 S.Ct. at 2726. In *Mahoney,* however, the district court relied upon the general findings of an earlier Supreme Court case, *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (decided under the equal protection clause), for its conclusion, adopted by the Court of Appeals, that

> [s]ince physical ability generally declines with age, mandatory retirement at age 50 serves to remove from police service those whose fitness for uniformed work *presumptively* has diminished with age. This clearly is rationally related to the State's objective.

*Mahoney v. Trabucco,* 574 F.Supp. 955, 958 (D.Mass.1983) (quoting *Murgia,* 427 U.S. at 315, 96 S.Ct. at 2568) (emphasis added), *rev'd,* 738 F.2d 35 (1st Cir.1984).

In light of *Criswell* and *Johnson* it seems clear that the *Mahoney* decision, based as it was on the reasonable relation standard and lacking particularized factual findings on the necessity of age limitations in preserving public safety, should be reexamined. However, the defendants argue that because *EEOC v. Trabucco,* 791 F.2d 1 (1st Cir.1986), which rejected another ADEA challenge to the same mandatory retirement statute, was decided after *Criswell* and *Johnson,* the *Mahoney* decision stands. This argument seems unconvincing.

*EEOC v. Trabucco* was an attempt to convince the court to reconsider *Mahoney*'s ruling on the basis that there was additional medical evidence which had not been presented in the earlier case. The opinion in *EEOC v. Trabucco* makes no reference to either *Criswell* or *Johnson,* and indeed, the issue of the proper formulation of the first prong of the BFOQ test

was not before the court. The issue in *EEOC v. Trabucco* was framed as "whether the principle of *stare decisis* forecloses redetermination of an issue raised, considered, and decided in [*Mahoney*] where the presentation of evidence has been 'one-sided,' with no proffer of rebuttal expert testimony." 791 F.2d at 2. The court held that "a weak or ineffective presentation in a prior case" does not deprive its ruling of precedential effect. *Id.* at 4. The opinion in *EEOC v. Trabucco* noted in passing that *Mahoney* had applied the reasonable relation test, *see* 791 F.2d at 3, but gave no indication the court was aware that the standard had changed in the meantime. Therefore, I believe *Mahoney* and *EEOC v. Trabucco* can no longer be considered preclusive authority for the proposition that State Police officers may be forced to retire as early as age 50, and the principles of *stare decisis* do not apply.

Frankly, the defendants' reliance on *Mahoney, EEOC v. Trabucco,* and *stare decisis* is somewhat puzzling. If those cases are still good law, that is, if age 50 is still a BFOQ for being a State Police officer, it is unclear that the Massachusetts legislature is free to raise that age without providing evidence of changed circumstances. Certainly, the defendants have cited no case establishing the proposition that when a BFOQ is decided to be age $X$, legislators are then free to set mandatory retirement at any arbitrarily selected age $X + N$. Indeed, this procedure would vitiate the entire concept of a BFOQ.

Nevertheless, there is post-*Criswell* First Circuit precedent for the proposition that age may sometimes qualify as a valid BFOQ in a law enforcement context. *EEOC v. City of East Providence,* 798 F.2d 524 (1st Cir.1986), held that a retirement age of 60 mandated by city ordinance was a BFOQ reasonably necessary to the operation of that city's police force. The main issue presented on appeal was whether the fact that the city did not require any of its officers to meet physical fitness standards precluded the city from insisting in litigation that those standards were reasonably necessary to the operation of the force. The court rejected that argument.

In *East Providence*, however, the court had sufficient basis to make a "supported factual finding that physical prowess and stamina" were necessary job qualifications. *See id.* at 528–29. On the record in this case, that finding would be an impermissible assumption. The court in *East Providence* was also presented with expert medical testimony establishing a factual basis for believing that officers over 60 could not meet the force's physical standards, and for believing that it was impossible to determine officers' fitness on an individual basis.[3] *See id.* at 528. Here, by contrast, the most thorough and authoritative evidence presented states unequivocally that currently available tests are more effective than age in identifying officers who may be unable to perform the law enforcement and public safety tasks required of them. *See* Frank J. Landy et al., *Alternatives to Chronological Age in Determining Standards of Suitability for Public Safety Jobs*, Executive Summary, at 17–18 (1992) [hereinafter "Landy report"]. Furthermore, the fact that East Providence was able to successfully defend an age cap of 60 has no bearing on whether the Commonwealth will be able to justify a cap of 55. The particularized factual findings requirement of *Johnson* obliges each police force to justify its own mandatory retirement age on its own facts. Police forces defending post-*Criswell* cases in other circuits have found this increasingly difficult to do. *See, e.g., EEOC v. Kentucky State Police Dep't*, 860 F.2d 665 (6th Cir.1988) (finding that, in absence of program for testing physical fitness, a mandatory retirement age of 55 was not a BFOQ), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); *EEOC v. Commonwealth of Pennsylvania*, 829 F.2d 392 (3rd Cir.1987) (holding that in absence of mandatory minimum fitness standards for all officers, the state police could not justify its mandatory retirement age of 60 as a BFOQ), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1109, 99 L.Ed.2d 271 (1988). *Cf. EEOC v. New Jersey*, 631 F.Supp. 1506 (D.N.J.1986), *aff'd*, 815 F.2d 694 (3rd Cir.1987) (upholding mandatory retirement at 55 for state police officers where all members of the force were subject to mandatory fitness requirements).

The BFOQ vista has undergone considerable landscaping since *Mahoney*. I believe the contours of the law were changed by *Criswell* and *Johnson;* the Landy report has overturned comfortable old assumptions about the reliability of age as an indicator of ability; and even the composition of the State Police has undergone a radical transformation. Other circuits have surrendered their admittedly easily administered mandatory retirement ages in favor of fairer although more cumbersome physical fitness standards. Given this metamorphosis, the case at hand seems an appropriate vehicle in which to revisit this circuit's treatment of the question of age as a proxy for performance. On the record in this case, it seems to me that the First Circuit's previous analysis of these issues deserves reconsideration.

Given that the plaintiffs have thus demonstrated a likelihood of success on the merits, and have prevailed, no matter how narrowly, on the other three factors, their motion for preliminary injunction is granted. An order will issue accordingly.

SO ORDERED.

---

**3.** Indeed, this evidence was undisputed due to the failure of the EEOC to procure expert rebuttal witnesses in a timely manner. *See East Providence*, 798 F.2d at 527.