USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-2485 DANIEL J. GATELY, ET AL., Plaintiffs, Appellees, v. COMMONWEALTH OF MASSACHUSETTS, ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Deborah S. Steenland, Assistant Attorney General, with whom Scott ____________________ _____ Harshbarger, Attorney General and Thomas A. Barnico, Assistant ___________ ___________________ Attorney General, were on brief for appellants. James B. Conroy, with whom Katherine L. Parks and Donnelly, ________________ ___________________ _________ Conroy & Gelhaar, were on brief for appellees. ________________ Paul D. Ramshaw, Donald R. Livingston, General Counsel, Gwendolyn _______________ ____________________ _________ Young Reams, Associate General Counsel, and Vincent J. Blackwood, ____________ _____________________ Assistant General Counsel, on brief for the U.S. Equal Employment Opportunity Commission, amicus curiae. ____________________ August 18, 1993 ____________________ STAHL, Circuit Judge. This is an appeal from a _____________ preliminary injunction issued pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et __ seq., prohibiting defendants-appellants Commonwealth of ____ Massachusetts, Thomas Rapone, Secretary of Public Safety, and Francis McCauley, Executive Director of the Massachusetts Retirement Board, from enforcing the statutorily mandated retirement of members of the Department of State Police aged 55 or older. For the reasons set forth below, we affirm. I. I. __ Factual Background Factual Background __________________ In December 1991, the Massachusetts legislature enacted 1991 Mass. Acts ch. 412 (effective July 1, 1992), which called for, inter alia, the consolidation of the _____ ____ Commonwealth's largest police force, the Division of State Police, with its three smaller forces, the Metropolitan District Commission Police ("MDC"), the Registry of Motor Vehicles Law Enforcement Division ("Registry"), and the Capitol Police. The newly consolidated police force is referred to as the "Department of State Police."1 Prior to the consolidation, officers of the MDC, Registry, and Capitol Police were subject to a mandatory retirement age of 65, and officers of the Division of State ____________________ 1. For purposes of clarity, however, throughout this opinion we refer to the new Department of State Police as the "Consolidated Department." -2- 2 Police were subject to a mandatory retirement age of 50. Section 122 of Chapter 412 repealed those mandatory retirement ages and declared that all members of the Consolidated Department who reach their fifty-fifth birthday on or before December 31, 1992, shall retire by that date. On December 21, 1992, ten days before the effective date of the new mandatory retirement age, plaintiffs, members of the former MDC and Registry divisions,2 commenced this action seeking injunctive relief on the grounds that the new mandatory retirement age violated the ADEA. See 29 U.S.C. ___ 623(a)(1). On December 30, 1992, after a hearing that same date, the district court issued an order granting plaintiffs' motion for preliminary injunctive relief. See Gately v. ___ ______ Massachusetts, 811 F. Supp. 26 (D. Mass. 1992). This appeal _____________ followed. II. II. ___ The Preliminary Injunction Standard The Preliminary Injunction Standard ___________________________________ In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e., "the hardship ____ to the nonmovant if the restrainer issues as contrasted with ____________________ 2. The complaint lists 45 officers, 30 of whom reached the age of 55 or older on December 31, 1992. -3- 3 the hardship to the movant if interim relief is withheld," Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st __________________________ ________ Cir. 1991); and (4) the effect on the public interest of a grant or denial of the injunction. See, e.g., id. However, ___ ____ ___ the "sine qua non of [the preliminary injunction standard] is ____ ___ ___ whether the plaintiffs are likely to succeed on the merits." Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). See ______ _________ ___ also United Steelworkers of America v. Textron, Inc., 836 ____ _______________________________ ______________ F.2d 6, 7 (1st Cir. 1987) ("The heart of the matter is whether `the harm caused plaintiff without the injunction, in __ light of the plaintiff's likelihood of eventual success on _____ __ the merits, outweighs the harm the injunction will cause defendants.'") (quoting Vargas-Figueroa v. Saldana, 826 F.2d _______________ _______ 160, 162 (1st Cir. 1987) (emphasis in original)). A party appealing a grant of a preliminary injunction bears the heavy burden of showing that the district court either committed a mistake of law or abused its discretion. Guilbert, 934 F.2d at 5. See also K-Mart ________ ___ ____ ______ Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. _____ ____________________ 1989) ("Decisions as to granting or withholding injunctive redress can best be made by trial courts steeped in the nuances of a case and mindful of the texture and scent of the evidence."). Without such a showing, we will not disturb the ruling below. Id. ___ -4- 4 Here, the district court weighed the four criteria recited above and held that the scales tipped in favor of an injunction. See Gately, 811 F. Supp. at 27-31. Although the ___ ______ court admitted that the evidence relative to the second, third, and fourth criteria was not markedly in either party's favor, it found that plaintiffs would likely succeed on the merits. Id. at 31. Accordingly, it issued the requested ___ preliminary injunction. On appeal, defendants generally challenge the court's application of all four criteria. Having reviewed the district court's opinion, however, it is clear to us that appellate elaboration is warranted only as to the first and second criteria. We therefore adopt the district court's cogent and well-reasoned opinion insofar as it relates to the other two prongs of the preliminary injunction test and focus on whether the court correctly presaged (a) plaintiffs' likelihood of success at trial, and (b) the potential for irreparable harm to plaintiffs in the absence of an injunction. III. III. ____ Discussion Discussion __________ A. Plaintiffs' Likelihood of Success _____________________________________ Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because -5- 5 of such individual's age . . . ." 29 U.S.C. 623(a)(1). The ADEA contains an "escape clause," however, which allows employers some limited flexibility to take age into consideration in business decisions. Commonly referred to as the "BFOQ exception," the clause allows employers "to take any action otherwise prohibited under [the statute] . . . where age is a bona fide occupational qualification reasonably necessary to the normal operation of a particular business . . . ." 29 U.S.C. 623(f)(1). As noted by the Supreme Court, this clause is "`an extremely narrow exception to the general prohibition' of age discrimination contained in the ADEA." Western Air Lines, Inc. v. Criswell, 472 U.S. _______________________ ________ 400, 412 (1985) (quoting Dothard v. Rawlinson, 433 U.S. 321, _______ _________ 334 (1977)). In Criswell, the Court enunciated a two-pronged ________ test for courts to use in discerning the width of the "extremely narrow" BFOQ exception. Id. at 412-20 (adopting ___ the two-part test outlined in Usery v. Tamiami Trail Tours, _____ _____________________ Inc., 531 F.2d 224, 235-36 (5th Cir. 1976)). Under the first ____ prong, the employer must be able to show that the qualification at issue is "reasonably necessary to the __________ _________ essence of [its] business . . . ." Criswell, 472 U.S. at 413 ________ (quoting Usery, 531 F.2d at 236) (emphasis in original); EEOC _____ ____ v. City of East Providence, 798 F.2d 524, 528 (1st Cir. 1986) _______________________ (quoting Criswell). The second prong requires that the ________ -6- 6 employer justify its use of age as a proxy for that qualification. Criswell, 472 U.S. at 414; City of East ________ ______________ Providence, 798 F.2d at 528. Justification can be __________ accomplished in one of two ways. The employer can show that it "`had reasonable cause to believe, that is, a factual _______ basis for believing, that all or substantially all persons _____ over the age qualification[] would be unable to perform . . . the duties of the job involved.'" Criswell, 472 U.S. at 414 ________ (quoting Usery, 531 F.2d at 235) (emphasis added). _____ Alternatively, the employer can establish that "it is `impossible or highly impractical' to deal with the older employees on an individualized basis." Criswell, 472 U.S. at ________ 414 (quoting Usery, 531 F.2d at 235). _____ As support for their contention that the district court erred in determining plaintiffs' likelihood of success under the ADEA, defendants make the following two arguments: (1) controlling precedent in this circuit forecloses plaintiffs' claims, see EEOC v. Trabucco, 791 F.2d 1 (1st ___ ____ ________ Cir. 1986) ("Trabucco II"); Mahoney v. Trabucco, 738 F.2d 35 ___________ _______ ________ (1st Cir.), cert. denied, 469 U.S. 1036 (1984) ("Trabucco _____ ______ ________ I"); and (2) plaintiffs' claims are barred by a 1986 _ amendment to the ADEA. See 29 U.S.C. 623(j). We address ___ each argument in turn. 1. Trabucco I and II 1. Trabucco I and II _____________________ -7- 7 Defendants first contend that plaintiffs' challenge to chapter 412 is precluded by the doctrine of stare decisis. _____ _______ In so doing, they rely upon a case in which we upheld a lower court's finding that the Massachusetts State Police's statutorily mandated retirement age of 50 was a BFOQ, see ___ Trabucco I, 738 F.2d at 37-42, and a case in which we ___________ subsequently reaffirmed Trabucco I on stare decisis ___________ _____ _______ principles. See Trabucco II, 791 F.2d at 2-5. Defendants' ___ ____________ reliance upon these cases is misplaced. The doctrine of stare decisis renders the ruling of _____ _______ law in a case binding in future cases before the same court ___ or other courts owing obedience to the decision. "[U]nlike the doctrines of res judicata and collateral estoppel, [the ___ ________ doctrine of stare decisis] is not narrowly confined to ______________ parties and privies, and it does not draw its force from the policy protecting final judgments." Trabucco II, 791 F.2d at ___________ 2. "Rather, when its application is deemed appropriate, the doctrine is broad in impact, reaching strangers to the earlier litigation." Id. ___ The essential principles of stare decisis may be _____ _______ described as follows: (1) an issue of law must have been heard and decided; (2) if an issue is not argued, or though argued is ignored by the court, or is reserved, the decision does not constitute a precedent to be followed; (3) a decision is stare decisis _____ _______ despite the contention that the court was not properly instructed by counsel on the -8- 8 legislative history, or that the argument was otherwise insufficient; (4) a decision may properly be overruled if seriously out of keeping with contemporary views or passed by in the development of the law or proved to be unworkable; and (5) there is a heavy presumption that settled issues of law will not be reexamined. Trabucco II, 791 F.2d at 4 (internal quotations and citations ___________ omitted). Fidelity to this principle promotes "stability, predictability, and respect for judicial authority." Hilton ______ v. South Carolina Pub. Rys. Comm'n, 112 S. Ct. 560, 564 _________________________________ (1991). As stare decisis is concerned with rules of law, _____ _______ however, a decision dependent upon its underlying facts is not necessarily controlling precedent as to a subsequent analysis of the same question on different facts and a different record. Complaint of Tug Helen B. Moran, Inc., 607 _____________________________________ F.2d 1029, 1031 (2d Cir. 1979). Cf. Gavin v. Chernoff 546 ___ _____ ________ F.2d 457, 458-59 (1st Cir. 1976) (invoking stare decisis to _____ _______ follow earlier opinion where "appellants' essential arguments remain much the same as those considered and [previously] rejected[, and] [t]here are no compelling new reasons and no change in circumstances justifying reconsideration of the previous decision") (internal quotation marks omitted). A brief examination of the two cases relied upon by defendants reveals the inapplicability of the doctrine here. In Trabucco I, the district court had held that Mass. Gen. L. __________ -9- 9 ch. 32, 26(3)(a), which mandated retirement at age 50 for the Division of State Police, while a valid BFOQ for the Division generally, violated the ADEA as applied to the plaintiff, a state trooper who had a desk job. We reversed, holding that the age qualification applied to all members of the state police, regardless of whether they had field or desk jobs. Trabucco I, 738 F.2d at 39 (phrase "`occupational __________ qualification' means more of a recognized and discrete vocation rather than a desk assignment for an employee subject to all the obligations and benefits of a quasi- military organization"). Our decision left intact, however, the district court's finding that age 50 was a BFOQ for the Division of State Police. Id. at 37. ___ After the district court ruling, but before our reversal, the EEOC brought an action challenging the very same mandatory retirement statute. The district court, relying upon Trabucco I, held that the action was foreclosed __________ by principles of stare decisis. On appeal, the EEOC _____ _______ contended that, because plaintiff Mahoney had offered no evidence at trial to rebut the Commonwealth's BFOQ evidence, the decision lacked precedential value. Trabucco II, 791 ____________ F.2d at 4. No facts had changed and the EEOC argued no new law. It simply contended that it would offer the expert testimony that had not been presented by plaintiff Mahoney. Although recognizing the "non-absoluteness of stare decisis," _____ _______ -10- 10 id. at 4, we analyzed the proceedings below and found that ___ Mahoney raised and argued, and the district court decided, the precise question of whether the across-the-board BFOQ was valid. Id. at 4-5 ("Thus, the issue in the case at bar was ___ addressed by Mahoney in his litigation, even if not as thoroughly as the EEOC would have desired."). As a result, we rejected the EEOC's attempt to reopen that issue. Trabucco II, 791 F.2d at 4-5 ("We have found no case, nor has ___________ appellant cited us to any, that supports its contention that a weak or ineffective presentation in a prior case deprives the ruling of precedential effect.").3 There are two compelling reasons why these cases do not foreclose the instant action. First, the question of whether a mandatory retirement age is a BFOQ is a fact- intensive inquiry. See Criswell, 472 U.S. at 417-23 ___ ________ (discussing the fact-based nature of the BFOQ defense); Johnson v. Mayor & City Council of Baltimore, 472 U.S. 353, _______ __________________________________ 362 (1985) (stressing the "particularized, factual showing" ____________________ 3. In so doing, we observed that counsel for the EEOC was not only aware of the [Trabucco I] __________ litigation, but could have intervened in the district court or could have filed an amicus brief on appeal. That it did neither was attributed to its assessment that the decision would not be given stare decisis effect and to certain _____ _______ practical problems, such as obtaining expert witnesses. Trabucco II, 791 F.2d at 4. ___________ -11- 11 required by the ADEA of an employer claiming an age qualification is a BFOQ); EEOC v. Boeing Co., 843 F.2d 1213, ____ __________ 1216 (1st Cir.) ("The validity of a BFOQ turns upon factual findings, preferably ones by a jury."), cert. denied, 488 _____ ______ U.S. 889 (1988); Muniz Ramirez v. Puerto Rico Fire Servs., _____________ ________________________ 757 F.2d 1357, 1358 (1st Cir. 1985) ("We must reject appellant's attempt . . . to have us rule as a matter of law that an entry age of thirty-five for firefighters is a BFOQ. A particular age limit for entry into a particular position is a matter of proof."). See also Monroe v. United Air ___ ____ ______ ___________ Lines, Inc., 736 F.2d 394, 405 (7th Cir. 1984) ("a once-valid ___________ BFOQ may lose its justification with advances in medical science. That the age 60 rule may have been a BFOQ in 1978 does not place it beyond challenge [in 1983]"), cert. denied, _____ ______ 470 U.S. 1004 (1985). Here, the facts--as found by the district court--differ from those underlying Trabucco I and ______________ II in one crucial respect. In the instant case, plaintiffs __ presented the district court with evidence, not available to the plaintiffs in Trabucco I and II, suggesting that age is __________________ not an effective proxy for determining an individual's suitability to serve in a public safety job. See Frank J. ___ Landy et al., Alternatives to Chronological Age in __________________________________________ Determining Standards of Suitability for Public Safety Jobs _____________________________________________________________ (January 31, 1992). And, as it made clear below, the district court found this evidence persuasive. See Gately, ___ ______ -12- 12 811 F. Supp. at 31 ("Here . . . the most thorough and authoritative evidence presented states unequivocally that currently available tests are more effective than age in identifying officers who may be unable to perform the law enforcement and public safety tasks required of them."). We see no abuse of discretion in the district court's evaluation of this evidence. Second, not only are the underlying facts in this case different from those present in Trabucco I and II, but __________________ the legal landscape has been altered in critical respects as well. In Trabucco I, which was decided prior to the Supreme __________ Court's most recent pronouncements on the ADEA, see supra pp. ___ _____ 6-7, this court applied a standard more lenient than that subsequently adopted by the Supreme Court to determine--under the first prong of the test--whether age was a BFOQ. In Trabucco I, we held that an employer must show that the age __________ qualification is "reasonably related" to the operation of its business. Trabucco I, 738 F.2d at 37. A year later, the __________ Supreme Court clarified that "[t]he BFOQ standard adopted in the statute is one of `reasonable necessity,' not reasonableness." Criswell, 472 U.S. at 419. See id. at 474 ________ ___ ___ (explaining further that "age qualifications [must] be something more than `convenient' or `reasonable'. . . .). The Court also reiterated that "the BFOQ exception `was in fact meant to be an extremely narrow exception to the general -13- 13 prohibition' of age discrimination contained in the ADEA." Id. at 412 (quoting Dothard, 433 U.S. at 334). Further, in a ___ _______ case issued the same day as Criswell, the Court elaborated on ________ the evidentiary standard which must be met in these cases, stressing that an employer must make a "particularized, factual showing" that age is an effective proxy for the qualification at issue. Johnson, 472 U.S. at 362 _______ In light of Criswell and Johnson, we agree with the ________ _______ district court's conclusion that Trabucco I, which was ___________ decided under the more lenient "reasonable relation" standard, and was based on less than the required "particularized, factual showing," has been called into question. See Gately, 811 F. Supp. at 30. ___ ______ In sum, therefore, this case involves a different set of facts, a newly crafted set of legal rules, and, as such, legal issues of first impression for this court. As a result, stare decisis does not provide a basis for avoiding a _____ _______ trial on the merits. 2. The 1986 Amendment to the ADEA 2. The 1986 Amendment to the ADEA __________________________________ Defendants next urge the application of 29 U.S.C. 623(j), a 1986 amendment to the ADEA which, they contend, forecloses plaintiffs' claims. We disagree.4 ____________________ 4. Although the district court did not address the applicability of this amendment, it is purely a matter of statutory interpretation, and therefore a question of law which we can review in the first instance. Cf. In re Erin ___ __________ Food Servs., Inc., 980 F.2d 792, 799 (1st Cir. 1992). _________________ -14- 14 The task of statutory interpretation begins with the language of the statute, and statutory language must be accorded its ordinary meaning. See, e.g., Telematics Int'l, ___ ____ _________________ Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 706 (1st Cir. ____ ____________________ 1992). Section 623(j) provides in relevant part: Firefighters and law enforcement officers attaining Firefighters and law enforcement officers attaining hiring or retiring age under State or local law on hiring or retiring age under State or local law on March 3, 1983[.] March 3, 1983[.] It shall not be unlawful for an employer which is a State . . . to discharge any individual because of such individual's age if such action is taken -- (1) with respect to the employment of an individual . . . as a law enforcement officer and the individual has attained the age of . . . retirement in effect under applicable State or local law on March 3, 1983, and (2) pursuant to a bona fide . . . retirement plan that is not a subterfuge to evade the purposes of this chapter.5 5 This amendment, which took effect on January 1, 1987, and expires on December 31, 1993, gives states and local officials a seven-year transition period within which they can lawfully retire law enforcement officers pursuant to ____________________ 5. The term "law enforcement officer" is defined as: [A]n employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of a State, including an employee engaged in this activity who is transferred to a supervisory or administrative position. . . . -15- 15 a retirement plan in effect on March 3, 1983. It was on that date that the Supreme Court decided, in the seminal case of EEOC v. Wyoming, 460 U.S. 226 (1983), that the ADEA's ____ _______ prohibition against mandatory retirement was applicable to states and local governments. According to defendants, this statute permits them to apply Chapter 412 to plaintiffs because (a) Mass. Gen. L. ch. 32, 26(3)(a), in effect on March 3, 1983, mandated __ ______ retirement at age 50 for the members of the former Division of State Police; (b) although Chapter 32, 26(3)(a) was not applicable to these specific plaintiffs on that date, it was applicable to the members of the former Division of State Police; and (c) the duties formerly assigned the Division of State Police have now been assumed by the members of the Consolidated Department. In effect, therefore, defendants contend that 623(j) allows them to take a group of officers who, in 1983, were subject to retirement at age 65, give them a new title in 1992, and, in so doing, subtract 10 years from their retirement age. The plain meaning of the statutory language simply does not support this result. Until its expiration on December 31, 1993, the statute allows states to retire an individual law enforcement officer on the basis of age if "the individual has attained the age of . . . retirement in __________ __ effect under applicable state or local law on March 3, 1983 . ______ __________ -16- 16 . . ." 29 U.S.C. 623(j)(1) (emphasis added). On March 3, 1983, the statute applicable to plaintiffs required them to __ __________ retire at age 65. Therefore, as plaintiffs have not "attained the age of . . . retirement in effect under applicable state or local law on March 3, 1983," 623(j) does not give defendants the refuge they seek. To be sure, the phraseology is not a model of clarity. Yet, in their effort to read a loophole into 623(j), defendants ignore the word "individual," which appears four times in the statute. When read as a whole, we believe that the language compels the conclusion that the word "applicable" means "applicable to the individual."6 Even if we were to construe the statute as being ambiguous, however, we do not believe that defendants' interpretation is consistent with the statute's purpose. As explained by Senator Wendell Ford of Kentucky, one of the primary architects of the final compromise version of this statute, Congress intended 623(j) "to provide relief to those jurisdictions which were forced to respond to [EEOC v. ____ Wyoming], while at the same time ensuring that no lesser _______ discrimination protection will be provided for these workers ___ _____ _______ than what was in effect at the time [EEOC v. Wyoming] was ____ _______ ____________________ 6. We want to make clear, however, that we do not read 623(j)(1) as allowing those officers who may have elected to transfer out of the MDC, Registry, or Capitol Police and into the Division of State Police to claim the retirement age applicable to them on March 3, 1983. -17- 17 decided." 132 Cong. Rec. S16850-02 (daily ed. October 16, 1986) (emphasis added). The statute, therefore, was enacted to give states a grace period of seven years during which time certain retirement plans for law enforcement officers would be exempted from the ADEA's reach. Senator Ford explained that the statute froze pre-existing age caps but did not exempt from scrutiny stricter age caps subsequently enacted: [T]his compromise establishes a floor for _____ the hiring and retirement requirements which a State or local government can set. The hiring and retirement age requirements of a plan in effect as of March 3, 1983 become the floor for _____ allowable plans. . . . If jurisdictions have raised or eliminated mandatory retirement ages after this date, they have the choice of either moving back to the plan requirements in effect on March 3, 1983, or remaining where they are. However, States and local governments would not be able to lower retirement age _____ requirements below what was [sic] in effect as of March 3, 1983. Id. (emphasis added). ___ Thus, in our view, neither the language of the statute nor its legislative history supports the position advanced by defendants. This statute was enacted to provide an exception, limited in both purpose and duration, to the ADEA's prohibition on mandatory retirement. The Commonwealth's reliance upon this limited exception to insulate from review its adoption of a new retirement policy which subtracts ten years from the retirement age statutorily -18- 18 applicable to plaintiffs on March 3, 1983, is therefore misplaced. In a last ditch attempt, however, to persuade us of 623(j)'s applicability, defendants alternatively argue that the statute is ambiguous, and, as such, any ambiguity must be resolved in the Commonwealth's favor. In support of their position, defendants cite Gregory v. Ashcroft, 111 S. Ct. _______ ________ 2395 (1991), in which the Supreme Court held that the ADEA did not preempt a state constitutional provision mandating the retirement of state judges at age 70. Id. at 2408 ___ (construing the "policymaking" exception in 630(f)). In that case, the Court reasoned that state judges are among those "`officers who participate directly in the formulation, execution, or review of broad public policy [and thus] perform functions that go to the heart of representative government.'" Id. at 2402 (quoting Sugarman v. Dougall, 413 ___ ________ _______ U.S. 634, 647 (1973)). The power of the people of a state to "determine the qualifications of their most important government officials" is, the Court held, fundamental to our federalist system. Id. Thus, courts should not, according ___ to Gregory, construe federal statutes to infringe on that _______ power unless Congress expresses its intent to do so in the plainest terms. Id. at 2401-03. Finding the text of ___ 630(f) ambiguous on the question of whether Congress intended to exempt state judges, the Court applied the "plain -19- 19 statement" rule, reasoning that "[i]n the face of such ambiguity, we will not attribute to Congress an intent to intrude on state governmental functions . . . ." Id. at ___ 2406. We have recently discussed the limited scope of the Court's holding in Gregory. See EEOC v. Massachusetts, 987 _______ ___ ____ _____________ F.2d 64, 67-70 (1st Cir. 1993). In that case, we reversed the district court's decision, based on its reading of Gregory, that the ADEA did not preempt a state statute _______ requiring annual medical examinations for its employees at age seventy. We reasoned that, although the Gregory court _______ was "unwavering in its desire to protect state sovereignty and principles of federalism," it made "unequivocally clear . . . the narrowness of its holding." EEOC v. Massachusetts, ____ _____________ 987 F.2d at 68, 69 ("At no point did the Court suggest that all state regulations of public employees are questions at the heart of state sovereignty."). We likewise reject defendants' argument that Gregory's "plain statement" rule bars plaintiffs' cause of _______ action. As discussed above, we find no ambiguities in the text of 623(j) which give us pause as to its applicability here. See Gregory, 111 S. Ct. at 2406 (explaining that ___ _______ "plain statement" rule is "a rule of statutory construction to be applied where statutory intent is ambiguous"). See ___ also Hilton, 112 S. Ct. at 566 (reiterating the same). ____ ______ -20- 20 Moreover, unlike the statutory exemption at issue in Gregory, _______ 623(j) makes plain Congress' intent that the ADEA protect law enforcement officers from forced retirement in cases where the retirement plan at issue is more restrictive than that in effect on March 3, 1983, or is a "subterfuge to evade the purposes" of the ADEA. In any event, we think defendants give Gregory far _______ too broad a reading. Plaintiffs, unlike the state judges at issue in Gregory, are not "constitutional officers" who _______ "participate directly in the formulation, execution, or review of broad public policy . . . ." Gregory, 111 S. Ct. _______ at 2401-02. Thus, the Court's concern with federal infringement of a core function going to the "heart of representative government" is not present here. For these reasons, therefore, we decline to apply Gregory in the manner _______ urged by defendants. Accordingly, we find no abuse of discretion or mistake of law in the district court's conclusion that there was a likelihood that plaintiff would succeed on the merits. We turn now to the question of irreparable harm. B. The Potential for Irreparable Harm ______________________________________ Defendants also contend that plaintiffs failed to make the requisite showing of irreparable harm, and that the district court, therefore, abused its discretion in granting plaintiffs' motion for injunctive relief. In so doing, -21- 21 defendants rely principally upon Sampson v. Murray, 415 U.S. _______ ______ 61 (1974), which they assert forecloses plaintiffs' claims. Because this court has not yet had occasion to engage in a detailed analysis of Sampson, and this case calls for a _______ careful reading of the opinion, we begin with a discussion of that case. In Sampson, the Supreme Court held that a _______ probationary federal employee, who sought to enjoin her dismissal from employment pending an administrative appeal to the Civil Service Commission ("CSC"), had to make a particularly strong showing of irreparable harm to obtain preliminary relief. Sampson, 415 U.S. at 91-92. The _______ critical facts are as follows. Upon her dismissal from the defendant government agency, the plaintiff filed an administrative appeal with the CSC, alleging that the agency, in dismissing her, had failed to follow applicable federal regulations. Subsequently, she filed an action in federal district court seeking reinstatement while her administrative appeal was pending. In her complaint, she alleged that the dismissal would deprive her of income and cause her to suffer the embarrassment of being wrongfully discharged. Finding that plaintiff might suffer irreparable harm before the CSC could consider her claim, the district court granted the injunction, and the Court of Appeals affirmed. Id. at 66-67. ___ The Supreme Court reversed, concluding that the harm -22- 22 plaintiff alleged she would suffer was not irreparable. Id. ___ at 91-92. The questions presented on appeal were twofold: (1) whether the district court had authority to issue the injunction, and (2) if so, whether the injunction was warranted. The Court stated early in its opinion that the two questions were analytically related and could not be neatly "bifurcated." Id. at 68. Accordingly, discussion of ___ the one makes little sense in the absence of any mention of the other. Although the Court ultimately answered the first question in the affirmative, it did so only after noting the multiple factors which weighed against a finding that the district court had authority to award the injunction at issue. Those factors included: (1) the fact that plaintiff was seeking relief prior to having exhausted her administrative remedies, and the concomitant "disruptive effect which the grant of the temporary relief . . . was likely to have on the administrative process," id. at 83; (2) ___ the lack of any express statutory basis for the injunction; (3) the absence of any case law supporting this particular injunction; (4) "the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs," id. at 83 ___ (internal quotations omitted); and (5) the fact that -23- 23 plaintiff was a probationary employee entitled to few procedural rights under the relevant regulations, id. at 81- ___ 82. Despite these considerations, however, the Court conceded the district court's limited authority to issue an injunction in this type of case, stating that it was "not prepared to conclude that Congress in this class of cases has wholly divested the district courts of their customary ______ authority to grant temporary injunctive relief . . . ." Id. ___ at 80 (emphasis added). Importantly, the Court then admonished district judges that, although the factors listed above did not render them "wholly bereft of the authority" to grant injunctive relief "in this class of cases," they could not exercise that authority "without regard to those factors." Id. Indeed, ___ the Court declared that those factors "are entitled to great weight in the equitable balancing process which attends the grant of injunctive relief." Id. ___ Before turning to the dispositive second question, i.e., whether injunctive relief was warranted, the Court again reiterated the close analytical relationship between the first and second questions: Although we do not hold that Congress has wholly foreclosed the granting of preliminary injunctive relief in such cases, we do believe that [plaintiff] at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of -24- 24 preliminary injunctions in Government personnel cases. Id. at 84. ___ In analyzing the second question, the Court first noted the complete absence in the record, with the exception of certain statements in plaintiff's unverified complaint, of any evidence of irreparable harm. Id. at 89-91. The Court ___ of Appeals had held that, at that stage of the proceedings, the district court did not need to find that plaintiff was actually irreparably harmed, and that, in any event, plaintiff's allegations afforded a basis for such a finding. The Court disagreed on both counts. First, the Court stated unequivocally that irreparable harm is a critical element of any injunctive relief in federal court. Id. at 88. Second, the Court ___ explained that plaintiff's allegations of temporary loss of income and harm to reputation did not amount to a sufficient showing of irreparable harm. Even under traditional standards, according to the Court, temporary loss of income, which can be recouped at the end of a trial, "does not usually constitute irreparable injury." Id. at 90.7 ___ ____________________ 7. This premise had particular force in a Civil Service case, the Court explained, because of the Back Pay Act, 5 U.S.C. 5596(b)(1), which provides a wrongfully discharged Civil Service employee with full payment and benefits for the time period she was out of work. The Court noted that the Act's legislative history suggested that "Congress contemplated that it would be the usual, if not the exclusive, remedy for wrongful discharge." Id. at 90-91. ___ -25- 25 As for plaintiff's allegations of harm to reputation, the Court found them unpersuasive. It was difficult to imagine, according to the Court, how the agency's failure to follow proper procedures in effectuating her discharge could cause harm to plaintiff's reputation, especially where any damage could be undone by an administrative determination in her favor. The Court assumed, however, for the purposes of its opinion, that plaintiff had made a satisfactory showing of financial and reputational hardship, and then held that such a showing "falls far short of the type of injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." Id. at 91-92. In a footnote ___ following this holding, the Court provided the following caveat: We recognize that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found. Such extraordinary cases are difficult to define in advance of their occurrence. We have held that an insufficiency of savings or difficulties in immediately obtaining other employment--external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself--will not support a finding of irreparable injury, however severely they may affect a particular individual. But we do not wish to be understood as foreclosing relief in the genuinely extraordinary situation. Use of the -26- 26 court's injunctive power, however, when discharge of probationary employees is an issue, should be reserved for that situation rather than employed in the routine case. Id. at 92 n.68 (citing Wettre v. Hague, 74 F. Supp. 396 (D. ___ ______ _____ Mass. 1947), vacated and remanded on other grounds, 168 F.2d ______________________________________ 825 (1st Cir. 1948)). As we read Sampson, it teaches that a federal court _______ cannot dispense with the irreparable harm requirement in affording injunctive relief; that temporary loss of income does not rise to the level of irreparable harm in the usual employee discharge case, see, e.g., Levesque v. Maine, 587 ___ ____ ________ _____ F.2d 78, 81 (1st Cir. 1978) (citing Sampson and holding that _______ plaintiff's "possible loss of earnings" did not amount to irreparable harm); and that, before enjoining a government agency from dismissing a Civil Service employee who has not exhausted her administrative remedies, a district court must find that the facts underlying the employee's allegations of irreparable harm are "genuinely extraordinary." E.g., ____ Soldevila v. Secretary of Agriculture, 512 F.2d 427, 429-30 _________ ________________________ (1st Cir. 1975). Sampson also stands for the general _______ principle that irreparable harm is subject to a sliding scale analysis, such that the showing of irreparable harm required of a plaintiff increases in the presence of factors, including the failure to exhaust administrative remedies, which cut against a court's traditional authority to issue -27- 27 equitable relief. See Chilcott v. Orr, 747 F.2d 29, 31-32 ___ ________ ___ (1st Cir. 1984) ("In view of the strong judicial policy against interfering with the internal affairs of the armed forces, we will apply the more stringent test of Sampson to _______ applications for preliminary injunctions by military personnel."); Bailey v. Delta Air Lines, Inc., 722 F.2d 942, ______ _____________________ 944 (1st Cir. 1983) ("Here, as in Sampson, we think that the _______ procedural requirements of Title VII should be considered in the equitable balancing process [and that] an aggrieved person seeking preliminary relief outside the statutory scheme for alleged Title VII violations would have to make a showing of irreparable injury sufficient in kind and degree to justify the disruption of the prescribed administrative process . . . ."). In interpreting Sampson, however, numerous other _______ courts have assumed that the "genuinely extraordinary" test for irreparable harm applies in all employee discharge cases, whatever the asserted basis for relief. See, e.g., Stewart ___ ____ _______ v. United States Immigration & Naturalization Serv., 762 F.2d ________________________________________________ 193, 199-200 (2d Cir. 1985); E.E.O.C. v. Anchor Hocking ________ _______________ Corp., 666 F.2d 1037, 1040-44 (6th Cir. 1981). But see _____ ___ ___ E.E.O.C. v. Cosmair, Inc., 821 F.2d 1085, 1090 (5th Cir. ________ _____________ 1987) (holding that irreparable harm is presumed where discharged employee has exhausted her administrative remedies and proceeds under a civil rights statute). -28- 28 Such a conclusion is predicated, in our opinion, upon an overly broad, and faulty, interpretation of Sampson's _______ holding.8 As the Court itself made clear early in its opinion, the questions of whether the district court had authority to issue the injunction and whether the irreparable harm finding was proper were not analytically distinct. Sampson, 415 U.S. at 68. The Court reiterated throughout the _______ opinion that the district court should not have weighed the irreparable harm allegations without taking into account the multiple factors rendering tenuous its authority to reinstate a discharged Civil Service employee pending the exhaustion of the administrative appeal process. See supra p. 23. Before ___ _____ leaving the question of the district court's authority, the Court explained that the plaintiff "must make a showing of irreparable injury sufficient in kind and degree to override __________ __ ________ these factors . . . ." Id. at 84 (emphasis added). As such, _____ _______ ___ the Court's conclusion that an extraordinary showing of ____________________ 8. In those cases in which we have applied Sampson's _______ heightened standard, we have relied upon the plaintiff's failure to exhaust available administrative remedies. See ___ Chilcott, 747 F.2d at 31-33 (plaintiff airman sought ________ injunction without seeking relief before appropriate Air Force administrative boards); Bailey, 722 F.2d at 943-45 ______ (plaintiff sought injunction prior to exhausting Title VII remedies); Soldevila, 512 F.2d at 429-30 (plaintiff civil _________ servant sought injunction prior to exhausting CSC appeals process). Thus, the precise question of Sampson's _______ applicability where a plaintiff has no administrative remedies to exhaust is one of first impression in this circuit. -29- 29 irreparable harm was required to override those factors was hardly surprising. Needless to say, those factors are not present in all employee discharge cases. And, it makes little sense, in our opinion, to require a district court to weigh all discharged employees' requests for injunctive relief as if they applied. Nothing in Sampson suggests that result. _______ Rather, the Court repeatedly referred to the fact-bound nature of its holding. For instance, the Court stated that the plaintiff's showing "falls far short of the type of injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." Id. at 91-92. __ ____ ____ __ ____ ___ And, in the footnote immediately following this holding, the Court stated that "[u]se of a court's injunctive power . . ., when discharge of probationary employees is an issue, should be reserved for [the genuinely extraordinary] situation . . . ."9 The case before us differs from Sampson in several _______ significant respects: (1) plaintiffs are not seeking interim injunctive relief pending the completion of an administrative ____________________ 9. As support for this holding, the Court cited Wettre, 74 ______ F. Supp. at 396, which, like the facts in Sampson, involved a _______ discharged civil servant who sought a temporary injunction pending the completion of the administrative appeals process. The Wettre court presciently held that, under the ______ circumstances, the complainants' allegations of loss of pay and prestige did not amount to irreparable harm. Wettre, 74 ______ F. Supp. at 400-01. -30- 30 appeals process; (2) the district court unquestionably had the authority to issue the requested equitable relief, see 29 ___ U.S.C. 626(b), (c); (3) plaintiffs' allegations of irreparable harm go beyond temporary loss of pay or reputational injury; and (4) plaintiffs' are not claiming that they are "entitled to additional procedural safeguards in effectuating the discharge." See Sampson, 415 U.S. at 91. ___ _______ Instead, they are arguing that their statutorily-based civil rights will be violated in the event of their discharge. Thus, all the factors which rendered the district court's authority to issue the injunction so tenuous in Sampson-- _______ factors which the court was required to take into consideration in weighing the plaintiff's irreparable harm allegations--are not present here. We do not think, therefore, that these plaintiffs must meet the same exacting standard required of the plaintiff in Sampson, although they _______ clearly must establish irreparable harm, and point to factors sufficient to overcome "the traditional unwillingness of courts of equity to enforce contracts for personal services." Id. at 83. ___ The district court held below that plaintiffs had made a sufficient, although not overwhelming, showing of irreparable harm. See Gately, 811 F. Supp. at 27-28. The ___ ______ Court rested its holding on two factual findings. First, the Court found that reinstatement would not be an available -31- 31 remedy for those plaintiffs who, at the close of a successful trial on the merits, would have reached the new retirement age, and, as a result of their earlier discharge, would lose their twilight years of employment. Id. at 27. Second, the ___ Court was persuaded by plaintiffs' argument that, "time spent away from the force [would] impair the plaintiffs' ability to stay in touch with new developments, especially during this time of transition, thus impairing their effectiveness and that of the State Police as a whole[,] if and when they are ultimately reinstated."10 Id. at 27. ___ Like the district court, we view the irreparable harm question as a close call. The sole factor cutting against the district court's authority to issue this injunction is the wide latitude traditionally granted the government in dispatching its own internal affairs. See ___ Sampson, 415 U.S. at 83. And, in accordance with Sampson's _______ _______ teachings, the district court took this factor into consideration before granting the injunction. Gately, 811 F. ______ Supp. at 28 (balancing the intrusion into internal governmental affairs that would result from the injunction with the harm to plaintiffs in the absence of it, and concluding that any harm to defendants was minimal by ____________________ 10. We recognize that the consolidation process had an anticipated completion date of June 30, 1993. On the basis of this record, however, we have no way of determining whether the process has, in fact, been completed. -32- 32 comparison). Ultimately, the district court balanced the equities and determined that, particularly in light of plaintiffs' high probability of succeeding on the merits, an injunction was warranted. Mindful of the broad discretion afforded a district court in weighing irreparable harm, see K-Mart Corp., 875 ___ _____________ F.2d at 915 (quoting Wagner v. Taylor, 836 F.2d 566, 575-76 ______ ______ (D.C. Cir. 1987)), we cannot say that the district court erred in concluding that, under the circumstances, plaintiffs made a sufficient showing of irreparable harm. Accordingly, we affirm the district court's ruling. IV. IV. ___ Conclusion Conclusion __________ In sum, we find the challenges leveled at the district court's issuance of the preliminary injunction unpersuasive. Accordingly, we affirm the district court's decision. Affirmed. Costs to appellees. Affirmed. Costs to appellees. _________ ___________________ -33- 33